**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**NEW ALBANY DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA ex rel. JESSICA KIETZMAN**<br><br>**Plaintiffs,**<br><br>v.<br><br>**THE BETHANY CIRCLE OF KING'S DAUGHTERS' OF MADISON, INDIANA, INC. d/b/a The King's Daughters' Hospital and Health Services,**<br><br>**Defendant.** | :<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: | Case No. 4:16-CV-00009<br><br>District Court Judge Sarah Evans Barker<br>Magistrate Judge Debra McVicker Lynch<br><br>**DEFENDANT'S MOTION TO DISMISS RELATOR'S AMENDED COMPLAINT**<br><br>***Oral Argument Requested Hereon*** |

Defendant The Bethany Circle of King's Daughters' of Madison Indiana, Inc. d/b/a The King's Daughters' Hospital and Health Services ("KDHS") respectfully requests that this Court dismiss Relator's Amended Complaint, pursuant to Federal Rules of Civil Procedure 12(b)(6) and 9(b), for failure to state a claim upon which relief can be granted and failure to plead her claims with the required particularity. This Motion is supported by the accompanying Memorandum of Law.

Respectfully submitted,

s/ Jennifer Orr Mitchell
Michael W. Hawkins (0012707)
Jennifer Orr Mitchell (0069594)
Matthew S. Arend (0079688)
DINSMORE & SHOHL LLP
1900 Chemed Center
255 East Fifth Street
Cincinnati, Ohio 45202
Phone: (513) 977-8200
Fax.: (513) 977-8141
***Counsel for Defendant The Bethany Circle of King's Daughters' of Madison Indiana, Inc. d/b/a The King's Daughters' Hospital and Health Services***

# MEMORANDUM OF LAW

## Table of Contents

**I. INTRODUCTION** .......... 1

**II. FACTUAL AND PROCEDURAL BACKGROUND** .......... 4

**III. LAW AND ARGUMENT** .......... 7

**A. The Standards Under Federal Rules 8, 9(b) and 12(b)(6)** .......... 7

**B. Relator's FCA claim must be dismissed for failure to plead or satisfy the scienter requirement.** .......... 8

**C. Relator's FCA claim must be dismissed because Relator cannot satisfy the FCA's falsity and materiality requirements.** .......... 11

**D. Relator's FCA claim must be dismissed for failure to plead fraud with the required particularity.** .......... 17

**E. Relator's FCA claim is barred, at least in part, by the applicable statute of limitations.** .......... 20

**F. Relator's conspiracy claim is barred under the intra-corporate conspiracy doctrine.** .......... 22

**G. Relator fails to state a claim for retaliation under the FCA.** .......... 23

**H. The Court should decline supplemental jurisdiction over Relator's state law claim for wrongful termination.** .......... 26

**IV. CONCLUSION** .......... 27

# Table of Authorities

**Statutes and Rules**


28 U.S.C. § 1367 ....................................................................................... 26

31 U.S.C. § 3729(a)(1)(A) ....................................................................... 9

31 U.S.C. § 3729(a)(1)(B) ....................................................................... 9

31 U.S.C. § 3730(b) ................................................................................. 8

31 U.S.C. § 3730(h) ................................................................................. 23, 25

31 U.S.C. § 3731(b) ................................................................................. 2, 21

Fed. R. Civ. P. 8 ....................................................................................... 7, 27

Fed. R. Civ. P. 9(b) ................................................................................. 1, 4, 7, 27

Fed. R. Civ. P. 12(b)(6) ........................................................................... 1, 4, 7, 27


**Cases**


*Abner v. Jewish Hosp. Health Care Servs., Inc.*, 2008 U.S. Dist. LEXIS 61985 (S.D. Ind. Aug 13, 2008) ....................................................................... 23

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) .................................................... 7

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) .............................. 7, 24

*Cause of Action v. Chi. Transit Auth.*, 815 F.3d 267 (7th Cir. 2016) ...................... 8

*DiLeo v. Ernst & Young*, 901 F.2d 624 (7th Cir. 1990) ............................ 7, 18

*Garst v. Lockheed-Martin Corp.*, 328 F.3d 374 (7th Cir. 2003) .................. 13, 17

*Hagood v. Sonoma County Water Agency*, 81 F.3d 1465(9th Cir. 1996) ................ 10

*Halasa v. ITT Educ. Servs.*, 690 F.3d 844 (7th Cir. 2012) ........................ 24

*Hindo v. University of Health Sciences*, 65 F.3d 608 (7th Cir. 1995) ................ 10

*Luckey v. Baxter Healthcare Corp.*, 183 F.3d 730 (7th Cir. 1999) ..................... 17

*Mason v. Medline Industries, Inc.*, 2009 U.S. Dist. LEXIS 43500 (N.D. Ill. May 22, 2009) .......... 11

*McAndrew v. Lockheed Martin Corp.*, 206 F.3d 1031 (11th Cir. 2000) .......... 3, 22

*Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. Walgreen Co.*, 631 F.3d 436 (7th Cir. 2011) .......... 20

*Singer v. Progressive Care, SC*, 2016 U.S. Dist. LEXIS 106454 (N.D. Ill. 2016) .......... 19, 26

*United States v. Acacia Mental Health Clinic, LLC*, 836 F.3d 770 (7th Cir. 2016) .......... 2, 8, 18

*United States v. AseraCare Inc.*, 176 F. Supp. 3d 1282 (N.D. Ala. 2016) .......... 12

*United States ex rel. Bogina v. Medline Indus., Inc.*, 809 F.3d 365 (7th Cir. 2016) .......... 18, 20

*United States ex rel. Bidani v. Lewis*, 1999 U.S. Dist. LEXIS 3530 (N.D. Ill. Mar.12, 1999) .......... 20

*United States ex rel. Chilcott v. KBR, Inc.*, 2013 U.S. Dist. LEXIS 153331 (C.D. Ill. 2013) .......... 3, 22

*United States ex rel. Clausen v. Lab. Corp. of Am.*, 290 F.3d 1301 (11th Cir. 2002) .......... 1, 13

*United States ex rel. Crews & Ill. v. NCS Healthcare of Ill., Inc.*, 460 F.3d 853 (7th Cir. 2006) .......... 1, 13

*United States ex rel. Dolan v. Long Grove Manor, Inc.*, 2014 U.S. Dist. LEXIS 98429 (N.D. Ill. July 18, 2014) .......... 13, 19

*United States ex rel. Durcholz v. FKW Inc.*, 189 F.3d 542 (7th Cir. 1999) .......... 22

*United States ex rel. Fowler v. Caremark R.X. L.L.C.*, 496 F.3d 730 (7th Cir. 2007) .......... 19

*United States ex rel. Frawley v. McMahon*, 2016 U.S. Dist. LEXIS 133907 (N.D. Ill. Sept. 28, 2016) .......... 26, 27

*United States ex rel. Grenadyor v. Ukrainian Vill. Pharmacy, Inc.*, 772 F.3d 1102 (7th Cir. 2014) .......... 8, 18

*United States ex rel. Gross v. AIDS Research Alliance-Chicago*, 415 F.3d 601 (7th Cir. 2005) .................... 7, 8, 17

*United States ex rel. Hanna v. City of Chicago*, 834 F.3d 775 (7th Cir. 2016) .................... 7, 9

*United States ex rel. Helfer v. Associated Anesthesiologists of Springfield, Ltd.*, 2014 U.S. Dist. LEXIS 117945 (C.D. Ill 2014) .................... 21

*United States ex rel. Hudalla v. Walsh Constr. Co.*, 834 F. Supp. 2d 816 (N.D. Ill. 2011) .................... 21

*United States ex rel. King v. F.E. Moran, Inc.*, 2002 U.S. Dist. LEXIS 16277 (N.D. Ill. Aug. 29, 2002).................... 21

*United States ex rel. Lamers v. City of Green Bay*, 168 F.3d 1013 (7th Cir. 1999) .................... 10, 11, 12

*United States ex rel. Leveski v. ITT Educ. Servs.*, 2010 U.S. Dist. LEXIS 137909 (S.D. Ind. May 12, 2010) .................... 22

*United States ex rel. Lusby v. Rolls-Royce Corp.*, 570 F.3d 849 (7th Cir. 2009) .................... 8, 18

*United States ex rel. Marshall v. Woodward, Inc.*, 812 F.3d 556 (7th Cir. 2015) .................... 16, 17

*United States ex rel. McGinnis v. OSF Healthcare Sys.*, U.S. Dist. LEXIS 89167 (C.D. Ill. July 1, 2014) .................... 23

*United States ex rel. Morton v. A Plus Benefits, Inc.*, 139 F. App'x 980 (10th Cir. 2005) .................... 12

*United States ex rel. Morison v. Res-Care, Inc.*, 2017 U.S. Dist. LEXIS 15917 (S.D. Ind. February 3, 2017).................... 23, 24

*United States ex rel. Polukoff v. St. Mark's Hosp.*, 2017 U.S. Dist. LEXIS 8167 (D. Utah 2017) .................... 12

*United States v. Sanford-Brown, Ltd.*, 840 F.3d 445 (7th Cir. 2016) .................... 2, 15

*United States v. Sci. Applications Int'l Corp.*, 626 F.3d 1257 (D.C. Cir. 2010) ....... 9, 10

*United States ex rel. Yannacopoulos v. Gen. Dynamics*, 652 F.3d 818 (7th Cir. 2011) .................... 9, 10, 11

*Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 133 S. Ct. 2517 (2013)................................ 25

*Universal Health Servs. v. United States ex rel. Escobar*, 136 S. Ct. 1989 (2016)........................................................................................................ 2, 9, 15, 16,17

*Wang v. FMC Corp.*, 975 F.2d 1412 (9th Cir. 1992) ............................................... 10

## I. INTRODUCTION

Relator Jessica Kietzman's ("Relator") claims are both factually and legally insufficient. Relator's Amended Complaint attempts to advance several claims and purports to set forth facts in support of those claims; however, even a cursory review of Relator's Amended Complaint reveals it to be wholly lacking the plausibility and particularity required under the False Claims Act ("FCA") and long-standing precedent. Relator's Amended Complaint contains nothing more than superficial details and is utterly devoid of the requisite factual support for her FCA claims.

Relator attempts to gloss or cover over the deficiencies in her Amended Complaint in several ways, none of which satisfies Rules 12(B)(6) or 9(B). For example, Relator includes references to various dates throughout the Amended Complaint, but those dates are largely of no consequence to the FCA claims she alleges against KDHS. Relator's Amended Complaint contains no dates of claims, no amounts, no certifications by KDHS, no names of doctors alleged to have engaged in any prohibited conduct, and no descriptions of any specific medical procedures or CPT codes. Most tellingly, Relator's Amended Complaint fails to provide any description or allegation of the presentment of any false or fraudulent claim for payment or approval, any false record or statement material to a false or fraudulent claim, or even any interactions between KDHS and the U.S. Government. These failures doom Relator's FCA counts.

Under Seventh Circuit law, where a relator fails to provide even a single false claim that was actually submitted, her claims under the False Claims Act ("FCA") must fail. *United States ex rel. Crews & Ill. v. NCS Healthcare of Ill., Inc.*, 460 F.3d 853, 856 (7th Cir. 2006). In this case, Relator's FCA claims fail. Her allegations are based only on her subjective beliefs and are insufficiently presented without any ascertainable standard or context. Where, as here, a relator's

allegations are based only on personal estimation and not supported in any concrete manner, the claims must fail under the heightened pleading standard set forth in Civ. R. 9(b). *United States v. Acacia Mental Health Clinic, LLC*, 836 F.3d 770, 780-781 (7th Cir. 2016). Claims for payment are the cornerstone of any case under the FCA and must be pled with particularity to satisfy Rule 9(b). Relator's Amended Complaint falls far short of this standard.

Further, Count I of Relator's Amended Complaint relies upon the pre-FERA version of the FCA and, as such, fails to allege, let alone make any showing of materiality, a required element under the current version of the FCA. In order to be actionable under the FCA, "a misrepresentation about compliance with a statutory, regulatory, or contractual requirement must be material to the Government's payment decision." *United States v. Sanford-Brown, Ltd.*, 840 F.3d 445, 447 (7th Cir. 2016). This requirement is both "rigorous" and "demanding." *Id.* Where, as here, a relator presents ***no*** evidence that the government's decision to pay would likely or actually have been different had it known of the alleged regulatory non-compliance, no liability can be imposed under the FCA.

The United States Supreme Court recently mandated that courts enforce the rigorous and demanding standard for materiality <u>*at the pleading stage*</u>. *See Universal Health Servs. v. United States ex rel. Escobar*, 136 S. Ct. 1989, 2003-04 (2016). The Supreme Court's holding in *Universal Health Servs.* requires dismissal of Relator's FCA counts.

Likewise, certain of Relator's allegations are barred *ab initio* by the statute of limitations based on the dates set forth in Relator's Amended Complaint. Certain of the conduct described by Relator, by her own admission, occurred more than fifteen years ago. Any claims premised upon conduct that occurred more than six years prior to the date Relator's initial complaint was filed must be dismissed. 31 U.S.C § 3731(b).

Relator's conspiracy claim, Count II, is barred under the intra-corporate conspiracy doctrine. KDHS is the only named defendant in this case. It is well settled that "a corporation cannot conspire with its employees, and its employees, when acting within the scope of their employment, cannot conspire among themselves." *McAndrew v. Lockheed Martin Corp.*, 206 F.3d 1031, 1036 (11th Cir. 2000). If the only persons involved in a conspiracy are a corporation and its employees, multiple actors do not exist to form the basis for a conspiracy. *Id.* See also, *United States ex rel. Chilcott v. KBR, Inc.*, 2013 U.S. Dist. LEXIS 153331, *42 (C.D. Ill. 2013) ("the intracorporate conspiracy doctrine bars FCA conspiracy claims where all the alleged conspirators are either employees or wholly-owned subsidiaries of the same corporation.") For this reason, Count II must be dismissed.

Relator's FCA retaliation claim, Count IV, must be dismissed for failure to state a claim, as Realtor cannot establish that her actions were FCA protected activity, that KDHS was aware of any protected activities prior to her termination, or that her termination would not have occurred "but for" her allegedly protected activities. Realtor specifically alleges that her allegations are premised upon her acting "in furtherance of" an FCA enforcement action, yet fails to allege any actions which would have put KDHS on notice that she was contemplating a qui tam action and does not allege any actions beyond internal complaints. Under Seventh Circuit precedent, such claims are not enough to state a claim. Additionally, Relator cannot establish that her termination would not have occurred "but for" her undertaking allegedly protected action.

Finally, this Court should exercise its discretion to decline to exercise supplemental jurisdiction over Plaintiff's pendant state law claim for wrongful termination, Count III, as Realtor has not alleged any valid federal claims that survive dismissal.

Relator has contrived claims against KDHS under the FCA that do not pass muster. Relator's Amended Complaint should be dismissed.

## II. FACTUAL AND PROCEDURAL BACKGROUND

Relator was employed at KDHS since 1999 and served as the Director of the Cancer Center from 2007 until October 2015. *See*, Amended Complaint at ¶ 8.

Relator's Amended Complaint is not a model of clarity. Rather than set out a detailed and straightforward description of some allegedly fraudulent conduct in which KDHS engaged, Relator instead relies on quantity over quality by making a series of vague and unconnected allegations spanning well more than a decade, hoping that this Court will allow at least one of her theories to survive dismissal. Relator's allegations are devoid of any meaningful detail that meets the requirements of Rules 9(b) or 12(b)(6).

The crux of Relator's Amended Complaint appears to be that KDHS engaged in improper billing practices relating to the reading of second radiological tests for cancer treatment planning purposes. *See*, *id.* at ¶ 18. Relator alleges that radiologists within KDHS would conduct an initial diagnostic scan on oncology patients. *See, id.* Thereafter, Relator alleges, KDHS radiologists would conduct a second full diagnostic read for radiation treatment planning purposes within a short period of time. *See, id.* Relator alleges that these second scans and readings were "improper and unnecessary" and "in contravention of CMS guidelines and regulations." *See*, *id.* Relator's Amended Complaint does not specify why these scans were allegedly unnecessary, nor does it specify which guidelines or regulations were allegedly violated by KDHS. Realtor also does not point to a single false claim that was actually billed to the U.S. government, or even identify what CPT code is at issue. She does not identify a false record or statement material to a false

claim, nor that any false claim was knowingly presented. Instead, she relies on allegations made solely "upon information and belief." *See*, *id.* at ¶ 63.

Relator also alleges that "sometime in early 2015" she discovered that a medical oncologist was not "adequately documenting his treatment, assessment, and physicians' orders concerning patients "in accordance with CMS." *See*, Amended Complaint at ¶ 33. Relator does not identify the oncologist at issue, does not include any specifics as to the claims at issue (including type of procedure, date of service, billing codes, etc.), does not specify in what way the documentation was allegedly lacking, nor does she allege which "CMS" regulations were supposedly violated. Indeed, Relator does not even allege that these claims were, in fact, false or that they were ever presented to the government. Relator's only allegation is that this alleged practice was "holding up the processing of bills by the hospital's coding and billing department." *See, id.* at 35.

Further, Relator alleges that KDHS engaged in improper billing related to fiducial markers used by the urology department. *See*, *id.* at ¶ 37. Despite being told that the billing raised "no compliance concerns," Relator alleges that KDHS was "illegally enticing the urologists to send patients to it" through the purchasing of fiducial markers. *See*, *id.* Again, Relator does not allege how or why these actions were "illegal," does not identify any claims that were allegedly presented by KDHS to the government, does not identify any false record or statement, and does not identify any statute or regulation that was allegedly violated.

Relator next alleges that KDHS violated the "meaningful use" mandate for radiology orders. *See*, *id.* at ¶ 38. However, again, Relator fails to identify any orders that were ever wrongfully made, fails to allege that any false claim was presented to the government, fails to allege that any false record or statement material to a false claim was made, used or caused to be

made, let alone knowingly so. Further, Relator does not specify which specific "meaningful use" standards were allegedly violated.

Relator also makes a vague allegation regarding an alleged lack of supervision for radiation therapy due to physicians calling off. *See*, *id.* at ¶ 44. Relator does not allege that any procedures were actually billed without supervision. Rather, Relator alleges only a single vague conversation in which she was allegedly told that KDHS would have to "make it work." *See, id.* Relator does not allege any specific false claims presented, does not identify a false record or statement material to a false claim, does not allege what physicians were involved, nor does she identify which CMS requirement was allegedly violated.

Finally, Realtor alleges that, starting from at least January 1, 2000 to the present, KDHS allegedly billed CMS for full radiological reads when limited or follow up ultrasounds were performed. *See*, Amended Complaint at ¶ 59. Again, Relator does not support her claim in any way and cannot point to a single example to illustrate her claims. She alleges only that "one of the OB physicians" raised the issue during a discussion that occurred "sometime between 2007 and 2009." *See, id.* at 61. Rather than specifically alleging that KDHS knew about these alleged improper acts, Relator again makes her allegation solely "upon information and belief," among other deficiencies in her pleading akin to the others detailed above. *See, id.* at 62.

Relator alleges that, beginning in September 2015, she raised concerns relating to KDHS' these matters during her employment with KDHS and that these actions led to her termination from employment with KDHS on October 5, 2015. *See*, *id*. at ¶ 45-58. Shortly thereafter, on January 1, 2016, Relator filed her qui tam complaint. *See, generally*, Docket. This lawsuit remained under seal until September 23, 2016, when this Court unsealed Relator's Complaint

after the Government filed its election to decline intervention on September 16, 2016. *See,* Order (Doc. 18). Relator filed her Amended Complaint on November 22, 2016.

## III. LAW AND ARGUMENT

### A. The Standards Under Federal Rules 8, 9(b) and 12(b)(6)

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a plaintiff must allege facts that, if accepted as true, are sufficient “to raise a right to relief above the speculative level” and “state a claim to relief that is plausible on its face.” *See*, *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). “A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.” *See, Ashcroft v. Iqbal*, 556 U.S 662, 678 (2009). Though the Court must accept all well-pleaded factual allegations in a complaint as true, it need not “accept as true a legal conclusion couched as a factual allegation.” *See, Twombly*, 550 U.S. at 555 (internal quotation omitted). Facially plausible complaints “allege more than labels and conclusions[;] . . . [the] factual allegations must be enough to raise a right to relief above the speculative level.” *See, id.*

Applying *Iqbal* and *Twombly*, a complaint alleging violation of the FCA requires more factual allegations than other complaints. Because it is an anti-fraud statute, claims under the FCA are "subject to the heightened pleading requirements of Rule 9(b) of the Federal Rules of Civil Procedure.*”* *United States ex rel. Hanna v. City of Chicago*, 834 F.3d 775, 778-779 (7th Cir. 2016), citing *U.S. ex rel. Gross v. AIDS Research Alliance-Chicago*, 415 F.3d 601, 604 (7th Cir. 2005). This means that the relator must "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). To meet this standard, the relator must allege "the who, what, when, where, and how: the first paragraph of any newspaper story." *DiLeo v.*

*Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990); *See also*, *United States ex rel. Lusby v. Rolls-Royce Corp.*, 570 F.3d 849, 853 (7th Cir. 2009). That includes "the identity of the person making the misrepresentation, the time, place, and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff." *U.S. ex rel. Grenadyor v. Ukrainian Vill. Pharmacy, Inc.*, 772 F.3d 1102, 1106 (7th Cir. 2014) (internal quotation marks omitted), cert. denied, 136 S. Ct. 49, 193 L. Ed. 2d 28 (2015).

Plaintiffs must "use some . . . means of injecting precision and some measure of substantiation into their allegations of fraud." *United States v. Acacia Mental Health Clinic*, LLC, 836 F.3d 770, 776 (7th Cir. 2016). The heightened possibility of mistake or bias supports the need for a higher standard of specificity for fraud compared to other civil litigation. *Id.* at 781. A relator's "subjective evaluation, standing alone, is not a sufficient basis for a fraud claim." *Id.* "Conclusory allegations" which "shed no light on the nature or content of the individual [statements] or why any particular false statement would have caused the government to keep the funding spigot open, much less when any payments occurred or how much money was involved" are not enough to meet the heightened particularity standards under Rule 9(b). *U.S. ex rel. Gross v. AIDS Research Alliance-Chicago*, 415 F.3d 601, 605 (7th Cir. 2005).

**B. Relator's FCA claim must be dismissed for failure to plead or satisfy the scienter requirement.**

The purpose of the False Claims Act is to provide for restitution to the government for money taken from it by fraud. *Cause of Action v. Chi. Transit Auth.*, 815 F.3d 267, 272 (7th Cir. 2016). The FCA allows a private individual to bring suit on behalf of himself or herself as well as the Government. *31 U.S.C. § 3730(b)(1)*. Under the FCA, liability only arises where a person "knowingly presents, or causes to be presented, a false or fraudulent claim for payment or

approval" or "knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim." *31 U.S.C. § 3729(a)(1)(A) and (B).*

The elements a relator is required to prove in order to prevail on a FCA claim are: (1) that the defendant made a statement in order to receive money from the government; (2) that the statement was false; and (3) that the defendant knew the statement was false. *United States ex rel. Hanna v. City of Chicago*, 834 F.3d 775, 778 (7th Cir. 2016), citing U.*S. ex rel. Yannacopoulos v. Gen. Dynamics*, 652 F.3d 818, 822 (7th Cir. 2011). Both FCA subsections share the following common elements: (1) a claim that was false or fraudulent; (2) knowledge of the falsity; and (3) materiality. *See 31 U.S.C. §§3729(a)(1)(A) and (B); Universal Health Servs.*, 136 S. Ct. at 1996. False Claims Act relators must plead their claims with plausibility and particularity under Federal Rules of Civil Procedure 8 and 9(b). *Universal Health Servs.*, 136 S. Ct. at 2004, n. 6. The FCA's elements of materiality and knowledge (scienter) are "rigorous" and courts must enforce the pleading requirements for these elements at the motion to dismiss stage. *Id.* at 2003, 2004, n.6.

Congress established the FCA's scienter requirement when it amended the Act in 1986 "to clarify" that even absent evidence of specific intent to defraud, "defendants were subject to liability . . . if they had 'actual knowledge' of the falsity of their claims or acted with 'deliberate ignorance' or 'reckless disregard' of the truth or falsity of their claims." *See*, *United States v. Sci. Applications Int'l Corp.*, 626 F.3d 1257, 1274 (D.C. Cir. 2010). However, this knowledge is not intended to impose blanket liability on an organization when any claims being submitted may be false. Congress had no intention to turn the FCA, a law designed to punish and deter fraud, into a vehicle for either "punishing honest mistakes or incorrect claims submitted through mere negligence" or imposing "a burdensome obligation" on government contractors rather than a

"limited duty to inquire." *See, id.* (internal citations omitted). The resulting statutory language demonstrates the care Congress took to balance competing objectives. Although Congress defined "knowingly" to include some forms of constructive knowledge, its definition of that term "imposes liability for mistakenly false claims only when the defendant deliberately avoided learning the truth or engaged in aggravated gross negligence." *See, id.* at 1275.

Under applicable Seventh Circuit law, courts have held that "[i]nnocent mistakes or negligence are not actionable," "that errors based simply on faulty calculations or flawed reasoning are not false under the FCA," and that "imprecise statements or differences in interpretation growing out of a disputed legal question are similarly not false under the FCA." *United States ex rel. Lamers v. City of Green Bay*, 168 F.3d 1013, 1018 (7th Cir. 1999) (citing *Hagood v. Sonoma County Water Agency*, 81 F.3d 1465, 1477-78 (9th Cir. 1996); quoting *Hindo v. University of Health Sciences*, 65 F.3d 608, 613 (7th Cir. 1995); *Wang v. FMC Corp.*, 975 F.2d 1412, 1420-21 (9th Cir. 1992). Likewise, "mere 'differences in interpretation growing out of a disputed legal question'" do not give rise to FCA liability. *United States ex rel. Yannacopoulos v. General Dynamics*, 652 F.3d 818, 836 (7th Cir. 2011) (quoting *Lamers*, 168 F.3d at 1018).

In this case, Relator cannot establish the requisite scienter. In numerous instances, Relator's allegations appear to be based on nothing more than her own unsupported interpretations of unidentified laws and regulations. These interpretations were admittedly in direct contradiction to the interpretation of KDHS' compliance professionals. For example, Relator admits in her Amended Complaint that her interpretation of laws and regulations relating to the payment by KDHS for fiducial markers for urologists was brought to the attention of and discussed with Margie Combs, the KDHS Director of Risk Management, Patient Safety, and

Compliance in May of 2015. *See,* Amended Complaint at ¶¶ 11, 37. As a result of this report, Relator acknowledges that she was instructed by Ms. Combs that, due to the structure of the billing arrangement between KDHS and the urologists there were "no compliance concerns" raised by the arrangement. *See, id.* at ¶ 37.

Likewise, Relator acknowledges that, upon raising a concern relating to order entry and "meaningful use" requirements, Rhonda Gosman, a charge master specialist at KDHS with extensive billing and coding expertise, advised that "there was support for billing from the Association of Community Cancer Centers that she discovered while attending the National Oncology Conference." *See,* Amended Complaint at ¶¶ 7, 42.

Relator does not allege why her beliefs are correct and KDHS's are not, nor does she indicate which regulations were allegedly violated or whether her contradictory beliefs are supported by any law, rule, regulation, official guidance or interpretation. Rather than supporting that KDHS acted "knowingly" in submitting allegedly false claims, Relator's allegations reflect the opposite. When Relator had concerns, she had an opportunity to discuss them with KDHS personnel who advised that her concerns were considered and investigated. To the extent KDHS compliance personnel reached differing conclusions from Relator regarding her concerns demonstrates only that, at most, there were "differences in interpretation growing out a dispute legal question." *Lamers*, at 1018; *Yannacopoulos,* at 836. As such, Relator's allegations do not establish that KDHS acted with the requisite scienter to support an FCA claim and Count I must be dismissed.

**C. Relator's FCA claim must be dismissed because Relator cannot satisfy the FCA's falsity and materiality requirements.**

In addition to failing to show that KDHS acted with the required scienter, Realtor's FCA claim fails because she cannot show that the claims submitted by KDHS were objectively false.

The FCA requires proof of an objective falsehood." *United States ex rel. Polukoff v. St. Mark's Hosp.*, 2017 U.S. Dist. LEXIS 8167, *23 (D. Utah 2017), citing *United States ex rel. Morton v. A Plus Benefits, Inc.*, 139 F. App'x 980, 982 (10th Cir. 2005). Thus, liability "must be predicated on an objectively verifiable fact." *Id.* "Expressions of opinion, scientific judgments, or statements as to conclusions about which reasonable minds may differ cannot be false." *Id. See also, Lamers* 168 F.3d 1013, 1018 (7th Cir. 1999) ("[I]mprecise statements or differences in interpretation growing out of a disputed legal question are similarly not false under the FCA.").

Relator's allegation that the second full radiological reads were improper amounts to nothing more than an allegation that the reads were medically unnecessary. However, Relator concedes that upon raising these concerns, KDHS representatives informed her that such reads were performed in the interest of "best patient care." *See*, Amended Complaint at ¶ 31. Thus, Relator's allegations are premised upon nothing more than her own unsupported judgment which conflicts with the medical judgment of KDHS physicians who were actually performing the services. Where, as here, the verification of an alleged false claim relies upon clinical medical judgments, they cannot form the basis of an FCA claim. *Polukoff*, at *23. This is due to the fact that such judgments are inherently ambiguous and therefore not subject to proof of objective falsehood. *Id.* A "mere difference of opinion between physicians, without more, is not enough to show falsity." *Id.*, at *25, quoting *United States v. AseraCare Inc.*, 176 F. Supp. 3d 1282, 1283 (N.D. Ala. 2016). Relator is not herself a physician and, as such, her allegations are even more specious.

Relator's FCA claim must also fail due to her failure to provide this Court with allegations of even a single false claim that was actually submitted to the U.S. government. Pursuant to Seventh Circuit authority, an FCA claim fails where, as here, the relator does not

adequately link any of the alleged practices to a particular false claim that was presented to the government. *United States ex rel. Crews v. NCS Healthcare of Illinois, Inc.*, 460 F.3d 853, 856-57 (7th Cir. 2006).

Indeed, the "sine qua non of a False Claims Act violation is the submission of a fraudulent claim." *Mason v. Medline Industries, Inc.*, No. 07 C 5615, 2009 U.S. Dist. LEXIS 43500, *10 (N.D. Ill. May 22, 2009), citing *United States ex rel. Clausen v. Lab. Corp. of Am.*, 290 F.3d 1301, 1311 (11th Cir. 2002). Accordingly a relator has the burden to link specific allegations of deceit to claims for government payment. *Id.*, citing *United States ex rel. Crews v. NCS Healthcare of Illinois, Inc.*, 460 F.3d 853, 856-57 (7th Cir. 2006) and *Garst v. Lockheed-Martin Corp.*, 328 F.3d 374, 378 (7th Cir. 2003). The relator cannot merely "describe a private scheme in detail but then . . . allege simply and without any stated reason for [her] belief that claims requesting illegal payments must have been submitted, were likely submitted or should have been submitted to the Government." *United States ex rel. Dolan v. Long Grove Manor, Inc.*, 2014 U.S. Dist. LEXIS 98429, at *12 (N.D. Ill. July 18, 2014), citing *U.S. ex rel. Clausen v. Laboratory Corp. of America, Inc.*, 290 F.3d 1301, 1311 (11th Cir. 2002).

Relator's allegations in this case fail this test. While her Amended Complaint purports to describe a number of alleged improprieties by KDHS, she fails to link any of these allegations to any specific false or fraudulent claim that was submitted to the government for payment or approval or any false record or statement material to a false or fraudulent claim. Relator's allegations are impermissibly vague. By way of example, rather than pointing to specific representative claims, Relator alleges only that

> Upon information and belief, starting at least from January 1, 2000 to the present, KDHS, directly, or through authorized agents, contractors, or others, has invoiced CMS and the United States, and the United States has paid to KDHS, for fraudulent billings in that KDHS has invoiced CMS and the United States for full

> radiological reads, while KDHS has, in fact, performed limited or follow up ultrasounds that should have been billed and reimbursed under different CPT codes.

*See*, Amended Complaint, at ¶ 59. The problems with this allegation in light of the case law discussed above are myriad. Relator has failed provide any detail which would allow the alleged fraudulent conduct to attach to a claim at an individualized transaction level, as required under Seventh Circuit law. She does not provide a single individual example to illustrate her beliefs, does not identify who submitted the claims, cannot narrow the window in which the claim was submitted to less than a seventeen year period, and does not provide any detail regarding which CPT code was allegedly billed. Moreover, Relator's claims are premised entirely "upon information and belief," which, as stated previously, does not suffice to establish a FCA claim.

Likewise, Relator's allegation in paragraph 62 of the Amended Complaint is similarly devoid of the required particularized detail as to any false or fraudulent claim by KDHS. Relator alleges only that:

> Upon information and belief, both Mrs. Morgan and Mrs. Dozier are aware of this fraudulent billing, and have,[*sic*] failed to correct the same. Furthermore, since 2000, KDHS has fraudulently billed the United States significant amounts per year for these procedures.

*See*, Amended Complaint, at ¶ 62. Again, Relator's allegations are "upon information and belief" and fail to describe any individualized claim submitted by KDHS, fail to provide any details as to estimated amounts billed (either per year or per claim), fail to identify the physician or other individual responsible for billing such a claim, and fail to identify the procedure at issue or a time frame less than 17 years long.

Similarly, Relator's allegation in paragraph 61 that certain issues were raised "at some time between 2007 and 2009, at one of the committee meetings" by "one of the OB physicians" is utterly devoid of the type of specific allegations of fraud linked to specific claims for payment

required to support an FCA allegation. Alleging that some nebulous issue was discussed at some unknown time within a three year window by unknown persons is nowhere near enough. Relator's FCA claim must be dismissed as she does not have the requisite facts to properly support a well pled claim for a violation of the FCA.

Not only does Relator's FCA claim fail due to her inability to identify a false claim that was submitted by KDHS, but it also fails due to Relator's inability to allege or show that the alleged falsity of any such claim would have been material to the government's decision to pay the claim. In *Universal Health Servs. v. United States ex rel. Escobar*, the United States Supreme Court reiterated that "False Claims Act plaintiffs must [] plead their claims with plausibility and particularity under Federal Rules of Civil Procedure 8 and 9(b)[.]" 136 S. Ct. 1989, 2004, n.6 (2016). It bears repeating that the Court explained that the FCA's elements of materiality and knowledge (scienter) are "rigorous" and that courts must enforce the pleading requirements for these elements at the motion to dismiss stage. *Id.* at 2003, 2004, n.6.

Under the current version of the FCA, in order to be actionable, "a misrepresentation about compliance with a statutory, regulatory, or contractual requirement must be material to the Government's payment decision." *United States v. Sanford-Brown, Ltd.*, 840 F.3d 445, 447 (7th Cir. 2016). In the months since *Universal Health Servs.* was decided, the Seventh Circuit has followed the Supreme Court's mandate, embracing both the importance of rigorous enforcement of the policies underlying the pleading requirements of Rule 9(b) and the "rigorous" and "demanding" standard for materiality. *Sanford-Brown*, at 447. Where, as here, a relator presents no evidence that the government's decision to pay would likely or actually have been different had it known of the alleged regulatory noncompliance, no liability can be imposed under the FCA.

Relator has not met the pleading standard for materiality, which requires particular facts supporting a plausible inference that the alleged false statements were "so central to the provision" of products that the Government "would not have paid these claims had it known of these violations." See *Universal Health Servs.*, 136 S. Ct. at 2004. Allegations showing "materiality can include, but [are] not necessarily limited to, evidence that the defendant knows that the Government consistently refuses to pay claims . . . based on noncompliance with the particular statutory, regulatory, or contractual requirement." *Id.* at 2003. A relator must also allege sufficient facts to show that the defendant knew the requirement at issue was material to the Government's payment decision. *Id.* at 1996.

Relator's primary premise for her FCA claim -- that radiologists within KDHS improperly conducted unnecessary secondary diagnostic scans for radiation treatment planning – is fatally flawed. It does not allege that KDHS somehow hid its conduct from the government or that the government was unaware of KDHS's practices. Indeed, per Relator's allegations, KDHS billed both the initial diagnostic scan and the later full radiation treatment planning scan and, in doing so, necessarily made no effort to disguise its conduct or mislead the government. *See*, Amended Complaint, at ¶ 18.

Moreover, Relator alleges in her Amended Complaint that KDHS's improper billing practices began "since at least January 1, 1999" and continued for at least 16 years until her termination in October, 2015. See, *id*. Throughout this entire period, the government continued to approve and pay all of the claims submitted by KDHS. Under Seventh Circuit authority, the question of whether an allegedly false statement is material for purposes of FCA liability is an objective standard. *United States ex rel. Marshall v. Woodward, Inc.*, 812 F.3d 556, 563 (7th Cir. 2015). The government's conduct is relevant to assessing materiality. *Id.* Where the government

is aware of the defendant's actions (by virtue of claims submitted) and continues to pay the claims, this is strong evidence that any alleged falsity was immaterial to the government's decision to pay. *Id.* at 563-564. Under any understanding of the concept, materiality "look[s] to the effect on the likely or actual behavior of the recipient of the alleged misrepresentation." *Universal Health Servs. v. United States ex rel. Escobar*, 136 S. Ct. 1989, 2002 (2016).

In this case, Relator has alleged that KDHS openly submitted claims that were not permitted for many years, making no attempt to hide its actions, and that government approved payment on those claims during the entire time period. When presented with Relator's allegations in her original complaint, after conducting its own inquiry, the government declined to intervene in the case. This decision by the Department of Justice to decline to intervene to prosecute this claim on its own behalf is further evidence that any allegedly false claim was not material to its decision. *Marshall*, 812 F.3d at 564, citing *Luckey v. Baxter Healthcare Corp.*, 183 F.3d 730, 732-33 (7th Cir. 1999).

**D. Relator's FCA claim must be dismissed for failure to plead fraud with the required particularity.**

In addition to and intertwined with the issues discussed above, Relator's Complaint must also be dismissed for failure to comply with the "particularity" requirement set forth under Fed. R. Civ. P. 9(b). The FCA is an anti-fraud statute and claims under it are subject to the heightened pleading requirements of Rule 9(b) of the Federal Rules of Civil Procedure. *United States ex rel. Gross v. Aids Research Alliance-Chicago*, 415 F.3d 601, 604, citing *United States ex rel. Garst v. Lockheed-Martin Corp.*, 328 F.3d 374, 376 (7th Cir. 2003) (Rule 9(b) applies "because the False Claims Act condemns fraud but not negligent errors or omissions.")

Complaints alleging FCA violations must comply with Rule 9(b)'s requirement that fraud be pled with particularity because of the stigmatic injury that potentially results from

allegations of fraud. *United States v. Acacia Mental Health Clinic*, LLC, 836 F.3d 770, 776 (7th Cir. 2016, citing, *United States ex rel. Bogina v. Medline Indus., Inc.*, 809 F.3d 365, 370 (7th Cir. 2016). As courts have observed, the requirement that fraud be pleaded with particularity exists because "a public accusation of fraud can do great damage to a firm before the firm is (if the accusation [is] prove[d] baseless) exonerated in litigation ... ." *Id.*, citing *United States ex rel. Grenadyor v. Ukrainian Vill. Pharmacy, Inc.*, 772 F.3d 1102, 1105 (7th Cir. 2014).

Under Rule 9(b), the relator must "state with particularity the circumstances constituting fraud or mistake." To meet this standard, the Seventh Circuit has long required the relator alleging a claim under the FCA to allege "the who, what, when, where, and how: the first paragraph of any newspaper story." *DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990); *See also*, *United States ex rel. Lusby v. Rolls-Royce Corp.*, 570 F.3d 849, 853 (7th Cir. 2009). That includes "the identity of the person making the misrepresentation, the time, place, and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff." *U.S. ex rel. Grenadyor v. Ukrainian Vill. Pharmacy, Inc.*, 772 F.3d 1102, 1106 (7th Cir. 2014) (internal quotation marks omitted), cert. denied, 136 S. Ct. 49, 193 L. Ed. 2d 28 (2015).

Relator's Amended Complaint fails this test. While Relator's Amended Complaint appears to be quite detailed at first glance, a closer look reveals glaring omissions in her allegations. Relator's Amended Complaint fails to provide any description or allegation of an actual specific false claim presented to the government for payment or approval, or any false record or statement made, used or caused to be made or used that was material to a false claim, or even any interactions with the government at all. Relator's Amended Complaint contains no dates of claims, no amounts, no certifications by KDHS, no names of doctors alleged to have

engaged in any prohibited conduct, and no descriptions of any specific procedures. Her allegations are impermissibly vague, describing conduct that allegedly occurred over a 16 year period, without providing any particularity as to dates or even providing this Court with a single example of an allegedly false claim.

While Relator is not required to "list every single patient, claim, or document involved," under long established Seventh Circuit authority, she must offer "at least some representative examples." *United States ex rel. Dolan v. Long Grove Manor, Inc.*, No. 10 C 368, 2014 U.S. Dist. LEXIS 98429, at *10 (N.D. Ill. July 18, 2014) These representative examples of fraudulent conduct must be pled with the requisite level of specificity "*at an individualized transaction level*." *Id.*, at *11 (N.D. Ill. July 18, 2014) (quoting *United States ex rel. Fowler v. Caremark R.X. L.L.C.*, 496 F.3d 730, 740-41 (7th Cir. 2007) (emphasis in original). Further, the specific allegations of deceit must be linked to specific claims for payment. *Dolan*, 2014 U.S. Dist. LEXIS 98429, at *12. Relator's Amended Complaint fails to provide this required level of particularity. She has failed to provide even single representative example to take her claims from a generalized allegation of wrongdoing to an actual well pled claim under Rule 9(b). This requirement for Relator to submit a representative example in order to state an FCA claim under Rule 9(b) holds true

> even when, as here, a relator alleges that a defendant has engaged in a scheme involving numerous fraudulent transactions over a period of years. [Relator] need not plead specifics with respect to every instance of fraud, but he must at least provide representative examples. He has not done so. [Relator] has failed to identify the date, amount, content, or payment for any single false claim. Accordingly, he has not stated his claims with sufficient particularity under Rule 9(b).

*Singer v. Progressive Care, SC*, 2016 U.S. Dist. LEXIS 106454, *18 (N.D. Ill. 2016) (internal citations omitted).

Additionally, as discussed above, many of Relator's allegation are premised "upon information and belief," further demonstrating that Relator has no evidence of an actual false claim, despite the window dressing of detail she has sprinkled throughout her Amended Complaint. "Allegations based on 'information and belief' . . . won't do in a fraud case—for 'on information and belief' can mean as little as 'rumor has it that . . .'." *United States ex rel. Bogina v. Medline Indus., Inc.*, 809 F.3d 365, 370 (7th Cir. 2016). Pleading fraud on information and belief is only permissible when "(1) the facts constituting the fraud are not accessible to the plaintiff and (2) the plaintiff provides the grounds for his suspicions." *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. Walgreen Co.*, 631 F.3d 436, 442-43 (7th Cir. 2011). Here, Relator served in various positions with KDHS for 16 years and served as Director of the KDHS Cancer Center for the last 8 years of her employment. As such, Relator cannot plausibly claim that the facts supporting her allegations were "not accessible" to her, such that her pleading "upon information and belief" would be permissible. Indeed, in her position as Director, Relator likely had more information regarding her allegation than any other individual within KDHS. As such, any claims premised upon information and belief in Relator's Amended Complaint must be dismissed.

**E. Relator's FCA claim is barred, at least in part, by the applicable statute of limitations.**

As detailed above, Relator's allegations do not include any specific dates for when the alleged false claims at issue were submitted to the government. Instead, Relator simply alleges that the alleged conduct took place "since at least January 1, 1999" or "starting at least from January 1, 2000 to the present" or "since 2000." See, Amended Complaint, at ¶¶ 18, 59, and 62. These allegations necessarily include conduct that allegedly occurred well beyond the maximum statute of limitations for an FCA claim. The FCA provides that a relator must bring her claims

within six years of a violation of the FCA or within three years of when the violation was or should have been discovered by an official of the United States charged with responsibility to act in the circumstances, whichever is later. 31 U.S.C. § 3731(b). The three-years-after-discovery provision ("the three-year rule") is limited by the requirement that the claim must be filed within ten years of when the violation occurred. *Id.*

A split exists among the federal courts of appeal whether the three-year rule provision set forth in § 3731(b)(2) applies to qui tam plaintiffs as well as to the government. The Seventh Circuit has yet to decide the issue, but a number of district courts in this circuit have held that both subsections may apply to relators. See, *e.g.*, *United States ex rel. Helfer v. Associated Anesthesiologists of Springfield, Ltd.*, 2014 U.S. Dist. LEXIS 117945 *52 (C.D. Ill 2014); *United States ex rel. Bidani v. Lewis*, No. 97 C 6502, 1999 U.S. Dist. LEXIS 3530, 1999 WL 163053, at *9 (N.D. Ill. Mar.12, 1999)("the three-year knowledge rule is measured by the knowledge of the qui tam plaintiff"); *United States ex rel. King v. F.E. Moran, Inc.*, No. 00 C 3877, 2002 U.S. Dist. LEXIS 16277, 2002 WL 2003219, at *13 (N.D. Ill. Aug. 29, 2002) (relator's three-year statute of limitations began when relator knew of alleged fraud); *United States ex rel. Hudalla v. Walsh Constr. Co.*, 834 F. Supp. 2d 816, 824 (N.D. Ill. 2011) (three-year statute of limitations begins when relator knew of fraud).

However, Judge Lawrence of this District has held the opposite, finding that “the plain language of the statute indicates that this ten-year statute of limitations applies to cases in which the government intervenes” and holding that the six year statute must apply in all non-intervened FCA cases. *United States ex rel. Leveski v. ITT Educ. Servs.*, 2010 U.S. Dist. LEXIS 137909, *10-11 (S.D. In. May 12, 2010). This Court should now do the same.

Regardless, the dispute does not matter in this case, as Relator's allegations make clear that she was aware of KDHS' alleged actions at all times relevant to her Amended Complaint. Thus, Relator cannot avail herself of the three-year rule and the six year statute of limitations will apply to all of Relator's allegations. Relator filed her original Complaint in this matter on January 1, 2016. Accordingly, all allegations by Relator of alleged conduct by KDHS which occurred before January 1, 2010 are time barred and must be dismissed.

**F. Relator's conspiracy claim is barred under the intra-corporate conspiracy doctrine.**

In addition to the grounds set forth above for dismissal of Realtor's FCA claim, Relator's conspiracy claim (Count II) must be dismissed, as it is barred under the intra-corporate conspiracy doctrine. The Seventh Circuit has held that "general civil conspiracy principles apply" to FCA conspiracy claims. *United States ex rel. Durcholz v. FKW Inc.*, 189 F.3d 542, 545 n. 3 (7th Cir. 1999) It is well settled that "a corporation cannot conspire with its employees, and its employees, when acting within the scope of their employment, cannot conspire among themselves." *McAndrew v. Lockheed Martin Corp.*, 206 F.3d 1031, 1036 (11th Cir. 2000). Essentially, if the only persons involved in a conspiracy are a corporation and its employees, multiple actors do not exist to form the basis for a conspiracy. *Id.* See also, *United States ex rel. Chilcott v. KBR, Inc.*, 2013 U.S. Dist. LEXIS 153331, *42 (C.D. Ill. 2013) ("the intracorporate conspiracy doctrine bars FCA conspiracy claims where all the alleged conspirators are either employees or wholly-owned subsidiaries of the same corporation.")

Here, Relator's allegations are directed solely towards KDHS and its employees. As such, pursuant to the intra-corporate conspiracy doctrine, KDHS and its employees are properly viewed as a single entity which is incapable of conspiring with itself. Accordingly, Relator's

claim for conspiracy fails to state a claim upon which relief can be granted and must be dismissed.

**G. Relator fails to state a claim for retaliation under the FCA.**

Relator fails to plead facts that would support the elements of a claim for retaliation (Count IV) under the FCA. In order to survive a motion to dismiss, a complaint alleging FCA retaliation claims brought pursuant to 31 U.S.C. §3730(h)(1) must contain factual allegations that, if proven, would establish that 1) the Relator was acting in furtherance of an FCA enforcement action or other efforts to stop violations of the FCA, 2) the employer knew Relator was engaged in protected conduct, and 3) the employer was motivated to take an adverse employment action against the Relator because of the protected conduct. *See* 31 U.S.C. § 3730(h); *see also United States ex rel. McGinnis v. OSF Healthcare Sys.*, No. 11-cv-1392, 2014 U.S. Dist. LEXIS 89167, at *34-35 (C.D. Ill. July 1, 2014) (citing *Brandon v. Anesthesia & Pain Mgmt. Assocs., Ltd.*, 277 F.3d 936, 944 (7th Cir. 2002)). Realtor's Amended Complaint is devoid of facts that would support any of these three required elements.

To the extent Relator's allegations are premised upon her acting "in furtherance of" an FCA enforcement action, this claim must fail. As Judge Young of this Court recently explained, an action "in furtherance of an enforcement action" means putting one's employer on notice that it faces a "distinct possibility" of being subject to a qui tam action. *United States ex rel. Morison v. Res-Care, Inc.*, No. 4:15-cv-00094-RLY-DML, 2017 U.S. Dist. LEXIS 15917, at *11-12 (S.D. Ind. February 3, 2017) (holding that merely informing employer that its practices may violate Medicare billing regulations did not constitute protected activity (citing *Brandon*, 277 F.3d at 944)); *see also Abner v. Jewish Hosp. Health Care Servs., Inc.*, No. 4:05-cv-0106-DFH-WGH, 2008 U.S. Dist. LEXIS 61985, 2008 WL 3853361, at *8 (S.D. Ind. Aug. 13, 2008) ("By

conducting their own investigation and by contacting federal officials in anticipation of litigation, the relators engaged in protected conduct.") Simply informing one's employer that certain actions are "illegal," "improper," or "fraudulent," without any explicit mention of the possibility that the employee may sue, will not suffice to show the Relator was acting in furtherance of an FCA enforcement action. *Morison*, 2017 U.S. Dist. LEXIS 15917, at *11-12 (citing *McGinnis*, 2014 U.S. Dist. LEXIS 89167, at *12).

In this case, Relator alleges only that she "voiced her concerns" and "raised serious concerns" that certain actions "did not comply" with regulatory requirements, but does not allege that she ever made anyone at KDHS aware that she may bring a qui tam action. *See* Amended Complaint, ¶¶ 37, 40-41. Relator also does not allege that she ever contacted anyone outside of KDHS regarding KDHS' alleged fraudulent conduct or filing a possible FCA claim until after her termination. As such, Relator's actions were not taken "in furtherance of" an FCA enforcement action. While these allegations may raise a question regarding whether her actions were undertaken as "other efforts to stop" violations of the Act, Relator has not made any allegations of such beyond a single formulaic recitation of the statutory language. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (holding that a plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do"). Accordingly, Relator's actions were not protected conduct under the FCA and her claim for retaliation should be dismissed.

Further, even assuming that Relator's conduct was protected by the FCA, Relator faces a second hurdle. She must show that her protected conduct was connected to KDHS' decision to fire her. *Halasa v. ITT Educ. Servs.*, 690 F.3d 844, 848 (7th Cir. 2012). Relator's Amended Complaint fails to plead facts sufficient to permit a plausible inference that she was terminated

"because of" FCA-protected activity. The statutory language of the FCA's retaliation provision makes clear that the adverse action triggering the entitlement to "relief" must be taken "because of" certain protected conduct. *See* 31 U.S.C. § 3730(h) (providing relief for those who are "discriminated against in the terms and conditions of employment ***because of*** lawful acts done by the employee, contractor, agent or associated others in furtherance of an action under this section or other efforts to stop 1 or more violations of this subchapter") (emphasis added). The United States Supreme Court has explained that the use of the term "because of" in the context of employment discrimination requires evidence of "but-for" causation. See *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2527 (2013).

In this case, KDHS would have had no reason to believe that Relator was engaged in protected conduct under the FCA at the time of her termination. While Relator alleges that her termination was "due to her opposition to ongoing fraudulent billing of the United States Government" and states that she caused a letter to be placed into her file which "indicated that her termination was solely due to her ongoing opposition to the fraudulent billing of Medicare by KDHS, and retaliation by Mrs. Dozier and Mrs. Morgan for Mrs. Kietzman not turning her head the other way," these allegations were made and this letter was created, by Relator's own admission, ***after*** Relator had already been informed of her termination. See Amended Complaint, ¶¶ 56, 58. Accordingly, these allegations cannot be relied upon by Relator to show that KDHS was aware that Relator was allegedly engaged in any protected conduct prior to her termination.

Although Relator speculates that KDHS terminated her for her internal complaints, (Amended Complaint ¶¶ 56-58), she fails to provide any facts to support that contention. Indeed, Relator even provides this Court with a host of other explanations for her termination, including her unprofessional behavior, miscommunications, and lack of leadership by Relator, her

perceived unhappiness with her position, concerns regarding staff unhappiness with Relator's leadership, her failure to fill deficiencies in open positions, and failure to utilize appropriate channels for pre-employment screening. *See* Amended Complaint, ¶¶ 50, 55. These allegations do not support a plausible claim that FCA-related activity was the "but-for" cause of Relator's termination.

Finally, where, as here, the Relator has failed to sufficiently plead underlying violations of the FCA, the Court cannot conclude that the allegations support a finding that that Relator was acting in furtherance of an FCA enforcement action or other efforts to stop violations of the FCA and a claim for retaliation under the FCA must be dismissed. *Singer v. Progressive Care, SC*, No. 11-cv-02679, 2016 U.S. Dist. LEXIS 106454, at *25 (N.D. Ill. Aug. 11, 2016) (citing *McGinnis*, 2014 U.S. Dist. LEXIS 89167, at *35). As shown above, Relator has failed to sufficiently plead any violation of the FCA. Accordingly, her claim for retaliation must likewise be dismissed.

**H. The Court should decline supplemental jurisdiction over Relator's state law claim for wrongful termination.**

Because Relator has failed to state a claim under federal law, the Court should decline to exercise supplemental jurisdiction over the state law count. *See* 28 U.S.C. § 1367(c). As the Seventh Circuit has explained in similar circumstances to the one presented here, where the court has dismissed all claims over which it has original jurisdiction, the court has discretion to decline to exercise supplemental jurisdiction. *See* 28 U.S.C. § 1367(c)(3); *see also United States ex rel. Frawley v. McMahon*, No. 11-cv-4620, 2016 U.S. Dist. LEXIS 133907, at *45-46 (N.D. Ill. Sept. 28, 2016) (noting that the decision to exercise supplemental jurisdiction is "squarely within [the district court's] discretion (citing *Miller v. Herman*, 600 F.3d 726, 738 (7th Cir. 2010))). The general rule is that when all federal claims are dismissed, the district court should decline to

exercise supplemental jurisdiction over the state law claims. *Frawley*, 2016 U.S. Dist. LEXIS 133907, at *46 (citing *Davis v. Cook Cty.*, 534 F.3d 650, 654 (7th Cir. 2008)). As Relator has failed to sufficiently plead a violation of the FCA, this Court should decline to exercise supplemental jurisdiction over her pendant state law claim and dismiss it.

## IV. CONCLUSION

For all of these reasons, Defendant The Bethany Circle of King's Daughters' of Madison Indiana, Inc. d/b/a The King's Daughters' Hospital and Health Services respectfully requests that this Court dismiss Counts I and II of Relator's Amended Complaint for failure to state a claim upon which relief may be granted, pursuant to Civ. R. 12(b)(6), and for failure to plead her claims with the requisite particularity and plausibility, pursuant to Civ. R. 8 and 9(b). Plaintiff's FCA claim, Count I, must be dismissed for failure to satisfy the scienter, falsity and materiality requirements of the FCA and for failure to plead with the requisite particularity, as well as being time-barred by the applicable statute of limitations. Plaintiff's conspiracy claim, Count II, must be dismissed based upon application of the intra-corporate conspiracy doctrine, as an entity cannot conspire with itself or its employees. Plaintiff's FCA retaliation claim, Count IV, must be dismissed for failure to state a claim, as Realtor cannot establish that her actions were FCA protected activity, that KDHS was aware of any protected activities prior to her termination, or that her termination would not have occurred "but for" her allegedly protected activities. Finally, this Court should decline to exercise supplemental jurisdiction over Plaintiff's pendant state law claim for wrongful termination, Count III, as Realtor has not alleged any valid federal claims that survive dismissal.

Respectfully submitted,

s/ Jennifer Orr Mitchell

Michael W. Hawkins (0012707)
Jennifer Orr Mitchell (0069594)
Matthew S. Arend (0079688)
DINSMORE & SHOHL LLP
1900 Chemed Center
255 East Fifth Street
Cincinnati, Ohio 45202
Phone: (513) 977-8200
Fax.: (513) 977-8141

***Counsel for Defendant The Bethany Circle of King's Daughters' of Madison Indiana, Inc. d/b/a The King's Daughters' Hospital and Health Services***

**REQUEST FOR ORAL ARGUMENT**

Because of the complexity of the factual and legal issues presented by this dispute, Defendant The Bethany Circle of King's Daughters' of Madison Indiana, Inc. d/b/a The King's Daughters' Hospital and Health Services respectfully requests oral argument.

s/ Jennifer Orr Mitchell
Jennifer Orr Mitchell (0069594)

**CERTIFICATE OF SERVICE**

I hereby certify on this 13th day of February 2017 that a true and correct copy of the foregoing document was served on all registered parties through the CM/ECF system:

s/ Jennifer Orr Mitchell
Jennifer Orr Mitchell (0069594)