**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**NEW ALBANY DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA ex rel. JESSICA KIETZMAN** | : | Case No. 4:16-CV-00009-SEB-DML |
| **Plaintiffs,** | : | District Court Judge Sarah Evans Barker<br>Magistrate Judge Debra McVicker Lynch |
| v. | : | |
| **THE BETHANY CIRCLE OF KING'S DAUGHTERS' OF MADISON, INDIANA, INC. d/b/a The King's Daughters' Hospital and Health Services,** | : | **DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS RELATOR'S AMENDED COMPLAINT** |
| **Defendant.** | : | |

Relator's opposition to KDHS's motion to dismiss exposes her fundamental misunderstanding of the applicable legal standards, ignores or misconstrues dispositive Seventh Circuit and United States Supreme Court precedents, and sets forth irrelevant justifications for the deficiencies in her Amended Complaint.

The Seventh Circuit has long held that a relator in a False Claims Act ("FCA") qui tam case must allege "the who, what, when, where and how" of each and every alleged basis upon which her claims are premised. *United States ex rel. Lusby v. Rolls-Royce Corp.*, 570 F.3d 849, 853 (7th Cir. 2009). It is incumbent upon a relator to plead more than "conclusory allegations" based upon her own "subjective evaluation" standing alone. *United States ex rel. Gross v. AIDS Research Alliance-Chicago*, 415 F.3d 601 (7th Cir. 2005); *United States v. Acacia Mental Health Clinic LLC*, 836 F.3d 770 (7th Cir. 2016). Relator has not done so and cannot do so.[1]

[1] Relator has separately filed a motion for leave to file a Second Amended Complaint but, for the reasons set forth in KDHS's opposition to that motion, such motion must be denied as futile, dilatory and prejudicial, just as a similar motion for leave to amend was denied at the same juncture by the trial court in *Acacia*. *United States v. Acacia Mental Health Clinic LLC*, 836 F.3d 770, 775 (7th Cir. 2016).

While Relator claims repeatedly in her opposition that various actions by KDHS were somehow improper, illegal, or fraudulent, she does not cite to a single statute or regulation she claims was violated, nor does she offer any relevant guidance from the government or other authoritative source to support the substance of her allegations. Relator simply does not allege the required context that would enable either KDHS or this Court to determine what claims are purportedly false and how they are purportedly false.

This Court need look no further than the Seventh Circuit's recent *Acacia* decision and analysis, and the facts pled (and not pled) therein, as its application is dispositive to and requires dismissal of Relator's Amended Complaint on the same reasoning. In *Acacia*, the Seventh Circuit held that:

> Rule 9 requires heightened pleading standards because of the stigmatic injury that potentially results from allegations of fraud. *United States ex rel. Bogina v. Medline Indus., Inc.*, 809 F.3d 365, 370 (7th Cir. 2016). "[A] public accusation of fraud can do great damage to a firm before the firm is (if the accusation [is] prove[d] baseless) exonerated in litigation ... ." *United States ex rel. Grenadyor v. Ukrainian Vill. Pharmacy, Inc.*, 772 F.3d 1102, 1105 (7th Cir. 2014). **We have observed, moreover, that "fraud is frequently charged irresponsibly by people who have suffered a loss and want to find someone to blame for it."** *Ackerman v. Nw. Mut. Life Ins.Co.*, 172 F.3d 467, 469 (7th Cir. 1999). If discovery is allowed to proceed, a defendant well may face a long period of time where it stands accused of fraud, placing what may be undue pressure on the defendant to settle the case in order to lift the cloud on its reputation. **The requirement that fraud be pleaded with particularity compels the plaintiff to provide enough detail to enable the defendant to riposte swiftly and effectively if the claim is groundless. It also forces the plaintiff to conduct a careful pretrial investigation and thus operates as a screen against spurious fraud claims.** *Fid. Nat'l Title Ins. Co. of N.Y. v. Intercounty Nat'l Title Ins. Co.*, 412 F.3d 745, 749 (7th Cir. 2005); see also *Vicom, Inc. v. Harbridge Merch. Servs., Inc.*, 20 F.3d 771, 777 (7th Cir. 1994) (discussing the Rule's purpose of "minimizing 'strike suits' and 'fishing expeditions'"); *Uni*Quality, Inc. v. Infotronx, Inc.*, 974 F.2d 918, 924 (7th Cir. 1992) ("Rule 9(b) ensures that a plaintiff have some basis for his accusations of fraud before making those accusations ... .").

*Id.* at 776-777 (emphasis added).

The Seventh Circuit in *Acacia* provided this Court with a road map as to how to proceed as to Relator's Amended Complaint. Relator's claims of fraud against KDHS are charged irresponsibly by Relator who is a disgruntled former employee looking for someone to blame for her termination other than herself -- a factor acknowledged by the Seventh Circuit in *Acacia* that should not be overlooked here. In *Acacia*, the Seventh Circuit reasoned, in pertinent part:

> **Not only does the lack of context make these allegations too indefinite, but each of the allegations depends entirely on [relator's] personal estimation— an estimation that is not supported in any concrete manner. Many potential relators could claim that "in my experience, this is not the way things are done."** However, relators may not be in a position to see the entire picture or may simply have a subjective disagreement with the other party on the most prudent course of action. **Further, their perspective may be colored by considerable bias or self-interest, such as in the case of a disgruntled employee. The heightened possibility of mistake or bias supports the need for a higher standard of specificity for fraud compared to other civil litigation.** See, e.g., *Fid. Nat'l Title Ins. Co.*, 412 F.3d at 749 (noting that Rule 9(b) "forces the plaintiff to conduct a careful pretrial investigation and thus operates as a screen against spurious fraud claims"); *Ackerman*, 172 F.3d at 469. ("[F]raud is frequently charged irresponsibly by people who have suffered a loss and want to find someone to blame for it."); *Uni*Quality, Inc.*, 974 F.2d at 924 ("Rule 9(b) ensures that a plaintiff have some basis for his accusations of fraud before making those accusations and thus discourages people from including such accusations in complaints simply to gain leverage for settlement or for other ulterior purposes.").

*Id.* at 780-781 (emphasis added).

Like the relator in *Acacia*, Relator's subjective evaluation is not a sufficient basis for her FCA claims and she alleges nothing else that would satisfy her pleading obligation. Relator must be held to a higher standard under Rule 9(b). Relator would have this Court disregard the Civil Rules and allow Relator's Amended Complaint to survive despite the fact that her vague allegations depend entirely on her own personal estimations – estimations that are not supported in any concrete manner and do not satisfy the heightened pleading standards.

In the case *sub judice*, Relator sets out numerous vague theories of that do not pass muster:

- For some period of time "since at least January 1, 1999," Relator alleges that KDHS somehow engaged in improper billing practices relating to the submission of an unidentified CPT code to bill Medicare/Medicaid for an unstated number of second full diagnostic reads of radiation treatment planning scans by radiologists that Relator believed were unnecessary and "in contravention of CMS guidelines and regulations" that are also not identified, and thereby is alleged to have improperly billed the United States "significant amounts to be determined after discovery and trial." *See Amended Complaint* at ¶18.
- "Some time in early 2015," Relator personally believes a "medical oncologist was not adequately documenting his treatment, assessment, and physicians orders concerning patients in accordance with CMS" and that for a period of time there were "several hundred thousand dollars floating around in coding and medical records" because physicians failed to complete required documentation which was "holding up the processing of bills." *See Amended Complaint* at ¶¶ 33-35.
- "In approximately mid-April, 2015," Relator believes there was a "compliance concern" (despite admitting she was told by KDHS compliance officers there was no compliance concern) relating to the billing and placement of fiducial markers by urologists who were not employed by KDHS because KDHS was alleged to have paid for the fiducial markers and was somehow "enticing" the urologists to send patients to the hospital. *See Amended Complaint* at ¶¶ 36-37.
- "In or about June 20, 2015," Relator alleges that KDHS was violating an unidentified standard within the "meaningful use mandate" because "only physicians should have access to, and be entering orders into the electronic medical system" and "order entry for

radiology orders must be directly entered by a licensed health care professional." *See Amended Complaint*, ¶¶ 38, 41.

- Relator alleges "in that same period" that there was an issue involving physician coverage for medical oncology as a "supervising provider" as required "pursuant to CMS regulations" and that physicians were assigned to this role who were not qualified in Relator's personal opinion. *See Amended Complaint*, ¶¶ 39-40.
- Relator believes there was also an issue about "direct supervision" by a physician being required for radiation therapy and that "CMS requirements" for direct supervision were not met due to Relator's belief that a physician was required to be "immediately available and interruptible to provide assistance and direction throughout the performance of the procedure." *See Amended Complaint*, ¶ 44.
- "Starting at least from January 1, 2000 to the present," KDHS had somehow "invoiced CMS and the United States" "and the United States has paid to KDHS" for "full radiological reads" while KDHS has "performed limited or follow up ultrasounds that should have been billed and reimbursed under different CPT codes" (no codes are identified by Relator) based upon information Relator learned at a committee meeting "at some time between 2007-2009." *See*, *Amended Complaint*, ¶¶ 59-61.
- "Furthermore, upon information and belief, there are additional unknown, but ongoing, fraudulent billing by KDHS to CMS and/or the United States, and specifically by or in relation to its radiology department, for unnecessary and/or inappropriate procedures." *See, Amended Complaint*, ¶ 63.

In *Acacia*, the Seventh Circuit affirmed dismissal of all but one of the relator's alleged theories of liability against the defendant. The one theory upon which the Seventh Circuit

permitted the relator in *Acacia* to proceed contained far more detail than any of these theories of liability Relator alleges against KDHS, including Relator's primary theory of liability premised on the alleged improper billing of a second full radiology read.

In *Acacia*, the relator identified a particular CPT code that was allegedly improperly billed, as well as a Medicare regulation that was purportedly violated; Relator here has done neither. In *Acacia*, the relator provided four patient examples of what she believed to be "unnecessary medical billings," which ultimately were deemed insufficient as pled to support her claims; here, Relator has not even made such an attempt, which would not save her claims in any event, but she now offers for the first time in footnotes in her opposition brief that she *could* do so if the Court so required.[2] *See Relator's Opposition*, p. 10 FN3 and p. 25 FN7. In *Acacia,* the relator alleged firsthand details of directives from defendants as to the submission of the very claims alleged to be false; Relator can allege no similar firsthand directives from KDHS and instead relies upon emails about unspecified other hospitals that were allegedly not billing in the same manner as KDHS. In *Acacia,* the relator was a nurse practitioner who did not have access to billing details; as Director of the Cancer Center at all relevant times, Relator cannot claim such a lack of access to information.

In *Acacia*, the Seventh Circuit affirmed dismissal of three theories of liability that it found lacked a concrete basis for the relator's allegations. A relator must provide some objective context, whether medical, technical, or scientific, which would enable the reader of a complaint to understand how the alleged actions are impermissible. *Acacia Mental Health Clinic, LLC,* 836

[2] Notably, Relator's proposed Second Amended Complaint, filed along with her motion for leave on February 28, 2017, does not contain any of these additional details about specific false claims that Relator now argues she could provide at some unidentified point in the future in an eleventh hour attempt to shore up her claims and avoid their dismissal by this Court, providing even more support for the Court's rejection of the proposed Second Amended Complaint as futile. *See, generally, Proposed Second Amended Complaint.*

F.3d at 780. Her own personal opinion is simply not sufficient. Likewise, all of Relator's theories of liability must be dismissed.

Similarly, in the *Lusby* case, the facts were pled with far more particularity than Relator has alleged in this case, yet the district court dismissed the suit on the ground that the complaint did not plead fraud with the particularity required by Fed. R. Civ. P. 9(b). *United States ex rel. Lusby v. Rolls-Royce Corp.*, 570 F.3d 849, 853 (7th Cir. 2009). On appeal, the Seventh Circuit again examined much more detailed allegations than those presented by Relator in the instant case. The court found that the relator's claims that were supported by detailed allegations as to specific part numbers, specific shipment dates, details of payment, five specific contracts, descriptions of test results allegedly confirming the relator's suspicions, specific allegations as to the certifications that were made, and allegations as to the specific regulation that was violated, satisfied Rule 9(b). *Id.* at 853-854. However, the Seventh Circuit also held that the relator's other more generalized allegations that "all of the parts were substandard" were not sufficiently pled and, therefore, upheld dismissal of those allegations for failure to satisfy Rule 9(b) because the complaint did not "offer any reason to think that Rolls-Royce committed fraud." *Id.* at 855. Such is the case presently before this Court – Relator has not offered any reason to think that KDHS committed fraud with the particularity required by Rule 9(b).

Relator herself cites to the Seventh Circuit's decision in *Lusby* as support for her argument that she does not need to identify any particular false claim or statement; unfortunately, the passage quoted by Relator and provided by her to this Court is incomplete. In *Lusby*, the entire passage from which Relator selectively quotes reads as follows:

> The district court held that, unless Lusby has at least one of Rolls-Royce's billing packages, he lacks the required particularity. Since a relator is unlikely to have those documents unless he works in the defendant's accounting department, the district court's ruling takes a big bite out of qui tam litigation. We don't think it

> essential for a relator to produce the invoices (and accompanying representations) at the outset of the suit. **True, it is essential to show a false statement.** But much knowledge is inferential – …and the inference that Lusby proposes is a plausible one.

*Id.* at 854 (emphasis added). Relator has not identified any false statement by KDHS to support Count I of her Amended Complaint, let alone the level of detail alleged by the relator in *Lusby*.

Relator then cites to a case from the Fifth Circuit for further support of the notion that she is not required to plead the details of an actually submitted false claim, but that merely pleading "details of the scheme are sufficient coupled with indicia that lead to a strong inference that the claims were actually submitted." *United States ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 190 (5th Cir. 2009). Once again, the citation Relator provides this Court does not contain the entirety of the court's holding or, more importantly, the context-specific rationale underlying the court's decision.

In *Grubbs*, it is first important to understand the "scheme" that was alleged in the relator's complaint. The relator, a psychiatrist, was hired by a hospital. Before his first weekend of work, he alleged that the chair of the medical staff of the psychiatric department and another psychiatrist at the hospital took him to dinner. Over dinner, the doctors divulged to him their fraudulent billing scheme and instructed him on how he was to contribute to the scheme. The doctors instructed him that during weekend on-call shifts, the doctors meet with the nursing staff to get updates on patients and then only see the patients "as needed" but every day bill as if a "face-to-face" hospital visit was performed. He further alleged that during his on-call weekend, the nursing staff did indeed attempt to assist him in recording face-to-face visits that had not occurred. He reported this practice to a hospital administrator the next day, who said to him, "[y]ou certainly figured that out quickly." In addition, the relator alleged at least one overt act of false billing for each doctor, containing a date, the type of service, the CPT code billed, and an

allegation that the medical records indicated that no services were provided on that date. *Id.* at 184. These facts, as alleged by the relator in *Grubbs*, stand in stark contrast to the allegations contained in Relator's Amended Complaint.

In discussing the presentment requirement of §3729(a)(1), which is the conduct that gives rise to liability, the *Grubbs* court held that "the particular circumstances constituting the fraudulent presentment are often harbored in the scheme." The court continued,

> Rather, the rule is context specific and flexible and must remain so to achieve the remedial purpose of the False Claims Act. We reach a workable construction of Rule 9(b) with complaints under the False Claims Act; that is, one that effectuates Rule 9(b) without stymieing legitimate efforts to expose fraud. We hold that to plead with particularity the circumstances constituting fraud for a False Claims Act §3729(a)(1) claim, a relator's complaint, **if it cannot allege the details of an actually submitted false claim, may nevertheless survive by alleging particular details of a scheme to submit false claims paired with reliable indicia that lead to a strong inference that claims were actually submitted**.
>
> **This standard comports with Rule 9(b)'s objectives of ensuring the complaint "provides defendants with fair notice of the plaintiffs' claims, protects defendants from harm to their reputation and goodwill, reduces the number of strike suits, and prevents plaintiffs from filing baseless claims then attempting to discover unknown wrongs**."

*Id.* at 189 (emphasis added). Relator has neither alleged an actually submitted false claim nor a *Grubbs* scheme with reliable indicia that lead to a strong inference that false claims were submitted by KDHS. Rather, Relator's lawsuit is exactly the sort that Rule 9(b) is designed to prevent, as outlined by the court in *Grubbs*.

Relator appears to acknowledge the deficiencies in her pleadings, as she requests leave to yet again amend her Amended Complaint, now with the benefit of KDHS's motion to dismiss, even before arguing why the allegations in her Amended Complaint are sufficiently pled. Her opposition then focuses primarily on her first theory of liability regarding second full radiation treatment planning scans and glosses over all of the others, some with no mention whatsoever

and no attempt to claim they are sufficiently plead under Fed. R. Civ. P. 8, 9(b) and 12(b)(6).

None of Relator's theories of liability have been plead with the particularity and plausibility required by the Civil Rules, let alone in the FCA context with the required scienter, falsity and materiality, as set forth in great detail in KDHS's motion to dismiss. Relator parses KDHS's arguments in its motion to dismiss and casts aspersions at KDHS, Mrs. Dozier, and Mrs. Morgan. In doing so, Relator highlights the very weaknesses of her claims that she would prefer this Court overlook. Relator's inability to link specific allegations of fraud to government payment is fatal to her claims. *U.S. ex rel. Garst v. Lockheed-Martin Corp.,* 328 F.3d 374, 378 (7th Cir. 2003).

Relator's opposition then launches into an implied false certification analysis on the authority of *Universal Health Servs. v. United States ex rel. Escobar,* 136 S. Ct. 1989 (2016). However, Relator's Amended Complaint contains no allegation that KDHS made any certifications to the United States, let alone what those certifications purportedly entailed or how they were material to the Government's decision to pay the claims Relator alleges to have been false. Perhaps the most glaring pleading deficiency in this context is that Relator does not identify what makes any claim submitted by KDHS false. Without any allegation of falsity connected to a claim for payment, it is impossible to decipher exactly what certification(s) Relator alleges KDHS knowingly made knowing they were false when made. *See United States ex rel. Hanna v. City of Chicago,* 834 F.3d 775, 779-780, 2016 U.S. App. LEXIS 15400, *10-13 (7th Cir. Ill. 2016) (holding that "[i]f the particularity requirement is meant to ensure more thorough investigation before filing, it is not too much to ask that one aspect of that investigation include the specific provisions of law whose violation made the certification of compliance

false.) In her proposed Second Amended Complaint, Relator attempts to cure this deficiency, but fails to do so and the Court should deny Relator's motion for leave as futile.

Moreover, simply arguing that something is material to the Government's decision to pay does not make it so. *See, e.g.*, Proposed Second Amended Complaint, ¶ 35. Relator's Amended Complaint (and her proposed Second Amended Complaint, for that matter) sets forth a claim premised on the pre-FERA version of §3729(a) in Count I and, necessarily, does not even include allegations relating to the materiality element. Prior to the 2009 FERA amendments, the language contained in §3729(a) did not contain an express materiality requirement. Relator's allegations, as pled, make no mention of this requirement. Rather, Relator's Amended Complaint alleges that KDHS "knowingly made, used, or caused to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the government." *See* Amended Complaint, ¶ 68. This is the old pre-FERA language.

Post-FERA, §3729(a) now requires that a complaint allege that the defendant in an FCA action "knowingly made, used, or caused to be made or used, a false record or statement ***material to*** a false or fraudulent claim." 31 U.S.C. §3729(a)(1)(B). Relator omits the materiality requirement entirely in her Amended Complaint. This omission is particularly glaring in light of the United States Supreme Court's recent admonition in *Escobar* that the materiality standard is "demanding" and "rigorous" and must be properly pled with both "plausibility and particularity" at the pleadings stage to survive a motion to dismiss. *Escobar*, 136 S. Ct. at 2003-2004, and n.6. As her Amended Complaint does not set forth allegations as to this element at all, Relator has clearly not met the standard set by the Supreme Court in *Escobar*.

Relator's reliance on *United States ex rel. Grenadyor v. Ukrainian Vill. Pharm., Inc.* to support her claims that she properly pled the "who, what, when, where, and how" of her

allegation is similarly misplaced. *See* Amended Complaint, ¶¶ 22-23. As the Seventh Circuit made clear in that case, "the requirement of pleading fraud with particularity includes pleading facts that make the allegation of fraud plausible." *United States ex rel. Grenadyor v. Ukrainian Vill. Pharm., Inc.*, 772 F.3d 1102, 1106 (7th Cir. 2014) In examining this requirement, the Seventh Circuit held that the relator's complaint in that case failed to include "non-conclusory allegations" that would have established each of the elements of an FCA violation with the required particularity under Rule 9(b). *Id.* In particular, the court in *Grenadyor* held that "it is not enough to allege, or even prove, that the pharmacy engaged in a practice that violated a federal regulation. Violating a regulation is not synonymous with filing a false claim." *Id.*, at 1107. Rather, a relator alleging an FCA violation must set forth particular facts as to each element which would support a plausible allegation of fraud.

Relator has not done so here. Relator's failure in this case to properly allege each of the required elements under the FCA with particularity fails to meet the heightened requirements to comply with Rule 9(b). Indeed, Relator can't even claim to have alleged a violation of a regulation in this instance, as her Amended Complaint fails to identify a single statute or regulation that she claims was violated in order to render the claims submitted by KDHS "false." Relator concedes that a six-year statute of limitations applies to her claims and that she does not seek to recover for any claims that occurred prior to January 19, 2010, which is six years prior to the date on which her lawsuit was filed, so all claims premised on conduct pre-dating January 19, 2010 are appropriately dismissed by this Court.

Further, Relator's arguments as to Count II are likewise unavailing, as she specifically alleges that "Defendant, its authorized agents and representatives, and/or its employees conspired to defraud the Government." *See Amended Complaint*, ¶71. Relator's Amended Complaint does

not allege that KDHS conspired with urologists and radiologists and Relator is prohibited from alleging these new facts in her opposition. *See United States ex rel. Hanna v. City of Chicago*, 834 F.3d at 779 (holding that "(f)raud and mistake must be pleaded with particularity; the pleader is not free to hold back and add facts via affidavit or brief."). Further, none of these individuals are named defendants to this litigation (nor should they be), as there is no basis upon which Relator can premise a conspiracy claim on the facts as alleged. Failure to allege with particularity the details of the alleged conspiracy to commit fraud are fatal to Relator's claims. *See United States ex rel. Morison v. Res-Care, Inc.*, 2017 U.S. Dist. LEXIS 15917 (S.D. Ind. Feb. 3, 2017).

In *Morrison*, this Court recently held:

> To plead a conspiracy claim, the relator must allege an agreement by two or more persons to accomplish a goal or goals and an act in furtherance of that agreement. Indep. Trust Corp. v. Stewart Info. Servs. Corp., 665 F.3d 930, 938-39 (7th Cir. 2012); United States ex rel. Walner v. NorthShore Univ. Healthsystem, 660 F. Supp. 2d 891, 898 (N.D. Ill. 2009); United States ex rel. Lisitza v. PAR Pharm. Cos., Inc., No. 06 C 06131, 2013 U.S. Dist. LEXIS 31224, 2013 WL 870623, at *7 (N.D. Ill. March 7, 2013) ("Facts must be alleged to suggest the existence of an agreement to violate the law."). An alleged conspiracy to defraud is held to Rule 9(b)'s heightened pleading standards. Goldberg v. Rush Univ. Med. Ctr., 929 F. Supp. 2d 807, 825 (N.D. Ill. 2013) (citing DiLeo v. Ernst & Young, 901 F.2d 624, 627 (7th Cir. 1990)) (dismissing quit tam fraud claim where relator "fail[ed] to allege with specificity what they conspired to do, when, where, or how").

*Morison*, 2017 U.S. Dist. LEXIS 15917 at *9-10.

Like the relator in *Morrison*, Relator fails to allege who agreed with whom to violate subsections 3729(a)(1)(A) and (B) of the FCA, an identified act in furtherance of the conspiracy, when the conspiracy was committed, who filed the allegedly false claims, the method by which the claims were filed, and the amount of payment. *See id.* at 10, citing *United States ex rel. Walner v. NorthShore Univ. Healthsystem*, 66 F.Supp. 2d 891, 898 (N.D. Ill. 2009) (dismissing FCA claim where relator "fails to plead who agreed with whom, how they agreed, how they

decided to file a false claim, who made the alleged misrepresentation, who filed the allegedly false claim, the method by which it was filed, and how much the payment was for.") Relator's Count II is so sketchy that it does not provide the required notice under Rule 8, let alone in the context of FCA litigation, under Rule 9(b).

Finally, Relator incorrectly contends that the 2009 FERA amendments to the *qui tam* retaliation statute, 31 U.S.C. §3730(h)(1), somehow invalidate KDHS's argument that Relator has failed to state a claim for retaliation under the FCA. This is incorrect. KDHS specifically addressed Realotr's claims using the language from the 2009 amendment. As discussed in KDHS's motion to dismiss, Relator made no allegations beyond a single formulaic recitation of statutory language that her actions were undertaken as "other efforts to stop" violations of the FCA. *See* Relator's Amended Complaint, ¶ 81. As such, Relator's actions were not protected conduct under the FCA and her retaliation claim fails for this reason, as well as the other reasons argued by KDHS in its motion.

For all of these reasons, and those stated in its motion to dismiss, Defendant The Bethany Circle of King's Daughters' of Madison Indiana, Inc. d/b/a The King's Daughters' Hospital and Health Services respectfully requests this Court grant its motion to dismiss Relator's Amended Complaint, with prejudice, and without leave to file a Second Amended Complaint that would be futile, as addressed separately.

Respectfully submitted,

s/ Jennifer Orr Mitchell
Michael W. Hawkins (OH 0012707)
Jennifer Orr Mitchell (OH 0069594)
Matthew S. Arend (OH 0079688)
DINSMORE & SHOHL LLP
1900 Chemed Center
255 East Fifth Street
Cincinnati, Ohio 45202
Phone: (513) 977-8200
Fax.: (513) 977-8141

Rodney L. Scott, (#14650-49)
WATERS TYLER HOFMAN SCOTT, LLC
1947 E. Spring Street
New Albany, IN 47150-1658
Phone: (812) 206-6044
Fax: (812) 949-2189

***Counsel for Defendant The Bethany Circle of King's Daughters' of Madison Indiana, Inc. d/b/a The King's Daughters' Hospital and Health Services***

## CERTIFICATE OF SERVICE

I hereby certify on this 22nd day of March 2017 that a true and correct copy of the foregoing document was served on all registered parties through the CM/ECF system:

s/ Jennifer Orr Mitchell
Jennifer Orr Mitchell (0069594)