**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**NEW ALBANY DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA ex rel. JESSICA KIETZMAN** | : | Case No. 4:16-CV-00009 |
| **Plaintiffs,** | : | District Court Judge Sarah Evans Barker<br>Magistrate Judge Debra McVicker Lynch |
| v. | : | |
| **THE BETHANY CIRCLE OF KING'S DAUGHTERS' OF MADISON, INDIANA, INC. d/b/a The King's Daughters' Hospital and Health Services,** | : | **DEFENDANT'S MEMORANDUM IN SUPPORT OF MOTION TO DISMISS RELATOR'S SECOND AMENDED COMPLAINT** |
| **Defendant.** | : | ***Oral Argument Requested Hereon*** |

Defendant The Bethany Circle of King's Daughters' of Madison Indiana, Inc. d/b/a The King's Daughters' Hospital and Health Services ("KDHS") hereby files this Memorandum of Law in support of its Motion to Dismiss Relator's Second Amended Complaint pursuant to Federal Rules of Civil Procedure 8, 9 (b), and 12(b)(6) for failure to state a claim upon which relief can be granted and failure to plead her claims with the required plausibility and particularity.

Respectfully submitted,

s/ Jennifer Orr Mitchell
Michael W. Hawkins (0012707)
Jennifer Orr Mitchell (0069594)
Matthew S. Arend (0079688)
DINSMORE & SHOHL LLP
1900 Chemed Center
255 East Fifth Street
Cincinnati, Ohio 45202
Phone: (513) 977-8200
Fax.: (513) 977-8141
***Counsel for Defendant The Bethany Circle of King's Daughters' of Madison Indiana, Inc. d/b/a The King's Daughters' Hospital and Health Services***

# MEMORANDUM OF LAW

## Table of Contents

**I. INTRODUCTION** .......... 1

**II. FACTUAL AND PROCEDURAL BACKGROUND** .......... 3

**III. LAW AND ARGUMENT** .......... 7

- **A. The Standards Under Federal Rules 8, 9(b) and 12(b)(6)** .......... 7
- **B. Relator's FCA claim must be dismissed because Relator cannot satisfy the FCA's falsity, scienter, and materiality requirements.** .......... 8
- **C. Relator's FCA claim must be dismissed for failure to plead fraud with the required particularity.** .......... 17
- **D. Relator's conspiracy claim must likewise be dismissed for failure to plead fraud with the required particularity.** .......... 27
- **E. Relator fails to state a claim for retaliation under the FCA.** .......... 28
- **F. The Court should decline supplemental jurisdiction over Relator's state law claim for wrongful termination.** .......... 29

**IV. CONCLUSION** .......... 30

# Table of Authorities


**Statutes and Rules**

28 U.S.C. § 1367(c) ........................................................................................ 29

31 U.S.C. § 3729, *et seq.* ................................................................................ 9, 12, 15, 27

31 U.S.C. § 3730 ............................................................................................ 12, 29

Fed. R. Civ. P. 8 ............................................................................................. 7

Fed. R. Civ. P. 9(b) ........................................................................................ 7, 8, 18

Fed. R. Civ. P. 12(b)(6) .................................................................................. 7

**Cases**

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ........................................................... 7

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) ..................................... 7

*Cause of Action v. Chi. Transit Auth.*, 815 F.3d 267 (7th Cir. 2016) ................ 12

*Davis v. Cook Cty.*, 534 F.3d 650, 654 (7th Cir. 2008) .................................... 3, 30

*DiLeo v. Ernst & Young*, 901 F.2d 624 (7th Cir. 1990) .................................... 1, 7, 8, 27

*Garst v. Lockheed-Martin Corp.*, 328 F.3d 374 (7th Cir. 2003) ........................ 10, 27

*Hindo v. University of Health Sciences*, 65 F.3d 608 (7th Cir. 1995) ................. 9

*Mason v. Medline Industries, Inc.*, 2009 U.S. Dist. LEXIS 43500
(N.D. Ill. May 22, 2009) ................................................................................. 10

*Miller v. Herman*, 600 F.3d 726 (7th Cir. 2010) ............................................... 29

*Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. Walgreen Co.*,
631 F.3d 436 (7th Cir. 2011) .......................................................................... 2, 26, 29

*Singer v. Progressive Care, SC*, 2016 U.S. Dist. LEXIS 106454
(N.D. Ill. 2016) .............................................................................................. 25

*United States v. Acacia Mental Health Clinic, LLC,* 836 F.3d 770
(7th Cir. 2016) ........................................................................................ 1, 2, 8, 17, 20, 21, 22, 23, 24

*United States v. AseraCare Inc.*, 176 F. Supp. 3d 1282 (N.D. Ala. 2016) ............... 10

*United States ex rel. Bogina v. Medline Indus., Inc.*, 809 F.3d 365
(7th Cir. 2016) ........................................................................................ 17, 26

*United States ex rel. Clausen v. Lab. Corp. of Am.*, 290 F.3d 1301
(11th Cir. 2002) ........................................................................................ 10

*United States ex rel. Dolan v. Long Grove Manor, Inc.*,
2014 U.S. Dist. LEXIS 98429 (N.D. Ill. July 18, 2014) ......................................... 10, 24

*United States ex rel. Fowler v. Caremark R.X. L.L.C.*, 496 F.3d 730
(7th Cir. 2007) ........................................................................................ 24

*United States ex rel. Frawley v. McMahon*, 2016 U.S. Dist. LEXIS 133907
(N.D. Ill. September 28, 2016) ........................................................................ 29

*United States ex rel. Grenadyor v. Ukrainian Vill. Pharmacy, Inc.*,
772 F.3d 1102 (7th Cir. 2014) ........................................................................ 1, 8, 18

*United States ex rel. Gross v. AIDS Research Alliance-Chicago*,
415 F.3d 601 (7th Cir. 2005) ........................................................................7, 8, 17, 19

*United States ex rel. Hanna v. City of Chicago*, 834 F.3d 775
(7th Cir. 2016) ........................................................................................ 7, 8, 19, 26

*United States ex rel. Lusby v. Rolls-Royce Corp.*, 570 F.3d 849
(7th Cir. 2009) ........................................................................................ 1, 7, 16, 18, 22

*United States ex rel. McGinnis*, 2014 U.S. Dist. LEXIS 89167
(C.D. Ill. February 3, 2014) ........................................................................ 3, 29

*United States ex rel. Polukoff v. St. Mark's Hosp.*, 2017 U.S. Dist. LEXIS 8167
(D. Utah 2017) ........................................................................................ 9, 10

*Universal Health Servs. v. United States ex rel. Escobar*, 136 S. Ct. 1989
(2016)........................................................................................ 2, 9, 14, 15, 17

## I. INTRODUCTION

Relator Jessica Kietzman ("Relator") is now on her third attempt at contriving claims against KDHS under the False Claims Act ("FCA"). Relator's Second Amended Complaint must be dismissed because none of Relator's theories of liability have been plead with the particularity and plausibility required by Civil Rules 8, 9(b), and 12(b)(6), let alone in the FCA context with the required scienter, falsity and materiality. Relator's claims against KDHS remain both factually and legally insufficient. Like her prior complaints, Relator's Second Amended Complaint is devoid of the requisite factual support for her FCA and other related claims.

While Relator now adds some new allegations in an attempt to support her claims and salvage her lawsuit, Relator's Second Amended Complaint fails to cure her pleading defects. Relator's Second Amended Complaint contains none of the "ascertainable standard or . . . context" of her claims, nor does it contain the "precision and some measure of substantiation" required by Seventh Circuit courts in order to meet the heightened standard of specificity for fraud claims as compared to other civil litigation. See, *United States v. Acacia Mental Health Clinic*, LLC, 836 F.3d 770, 776 and 780-781 (7th Cir. 2016).

In order to survive dismissal, a relator must allege "the who, what, when, where, and how" of the alleged false claim. *DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990); *See also, United States ex rel. Lusby v. Rolls-Royce Corp.*, 570 F.3d 849, 853 (7th Cir. 2009). That includes "the identity of the person making the misrepresentation, the time, place, and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff." *U.S. ex rel. Grenadyor v. Ukrainian Vill. Pharmacy, Inc.*, 772 F.3d 1102, 1106 (7th Cir. 2014) (internal quotation marks omitted), cert. denied, 136 S. Ct. 49, 193 L. Ed. 2d 28 (2015). Relator's Second Amended Complaint fails this test.

Where, as here, a relator's allegations are based only on personal estimation and not supported in any concrete manner, the claims must fail under the heightened pleading standard set forth in Civ. R. 9(b). *United States v. Acacia Mental Health Clinic, LLC*, 836 F.3d 770, 780-781 (7th Cir. 2016). Moreover, claims for payment are the cornerstone of any case under the FCA and must be pled with particularity to satisfy Rule 9(b). Relator's inability to link specific allegations of fraud to government payment is fatal to her claims. *U.S. ex rel. Garst v. Lockheed-Martin Corp.*, 328 F.3d 374, 378 (7th Cir. 2003). Relator's Second Amended Complaint falls far short of the mark set by the Seventh Circuit.

In arguably the most important recent United States Supreme Court decision in the FCA arena, the Supreme Court just last year mandated that lower courts enforce the "rigorous and demanding standard for materiality *at the pleading stage*. *See Universal Health Servs. v. United States ex rel. Escobar*, 136 S. Ct. 1989, 2003-04 (2016). The Supreme Court's holding in *Universal Health Servs.* requires dismissal of Count I of Relator's Second Amended Complaint when applied to the facts alleged -- and not alleged -- therein.

Relator's other counts also fail. As to Count II, failure to allege with particularity the details of an alleged conspiracy to commit fraud are fatal to Relator's claims. *See United States ex rel. Morison v. Res-Care, Inc.*, 2017 U.S. Dist. LEXIS 15917 (S.D. Ind. Feb. 3, 2017). In fact, Relator's Count II is so sketchy that it does not provide the required notice under Rule 8, let alone in the context of FCA litigation, under Rule 9(B). Moreover, as to Count IV, Relator has failed to sufficiently plead underlying violations of the FCA. As a result, the Court cannot conclude that the allegations support a finding that that Relator was acting in furtherance of an FCA enforcement action or other efforts to stop violations of the FCA and a claim for retaliation under the FCA must be dismissed. *Singer v. Progressive Care*, SC, 2016 U.S. Dist. LEXIS

106454 *25 (N.D. Ill. August 11, 2016), citing *United States ex rel. McGinnis*, 2014 U.S. Dist. LEXIS 89167 at *35. Finally, as to Count III, the general rule is that when all federal claims are dismissed, a district court should decline to exercise supplemental jurisdiction over the state law claims. *See Davis v. Cook Cty.*, 534 F.3d 650, 654 (7th Cir. 2008).

In allowing Relator's Second Amended Complaint, this Court cited to *Gonzales-Koeneke v. West*, 791 F.3d 801, 807-08 (7th Cir. 2015). This Court reasoned that Relator had not yet been allowed an opportunity to amend her complaint after dismissal and that, by allowing the Second Amended Complaint, this Court was permitting Relator pre-emptively to amend her complaint, in essence allowing her the opportunity now instead of later. Accordingly, Relator having not cured the deficiencies in her pleading, KDHS respectfully requests dismissal without further leave to amend, for all of the reasons set forth in greater detail below.

## II. FACTUAL AND PROCEDURAL BACKGROUND

Relator was employed at KDHS starting in 1999 and served as the Director of the Cancer Center from 2007 until October 2015. *See*, Second Amended Complaint at ¶ 8.

Rather than set out a detailed and straightforward description of some allegedly fraudulent conduct in which KDHS engaged, Relator instead relies on quantity over quality by making a series of vague and unconnected allegations dating back to January 2010, hoping that this Court will allow at least one of her theories to survive dismissal. Relator's allegations are devoid of any meaningful detail that meets the requirements of Rules 9(b) or 12(b)(6).

The main theory of liability set forth in Relator's Second Amended Complaint appears to be that KDHS engaged in improper billing practices relating to the reading of second radiological tests for cancer treatment planning purposes. *See id.* at ¶ 23. Relator alleges that radiologists within KDHS would conduct an initial diagnostic scan on oncology patients. *See id.*

at ¶ 22. Thereafter, Relator alleges, KDHS radiologists would conduct a second full diagnostic read for radiation treatment planning purposes within a short period of time. *See id.* at ¶ 23. Relator alleges that these second scans and readings were "improper and unnecessary" and "in contravention of CMS guidelines and regulations." *See id.* at ¶ 24.

Relator's Second Amended Complaint does not specify why these scans were allegedly unnecessary, nor does it specify which guidelines or regulations were allegedly violated by KDHS. Relator also does not point to a false claim that was actually billed to the U.S. government, or even identify what CPT code is at issue. These fundamental flaws in Relator's first theory of liability, upon which she invests most of her effort in the Second Amended Complaint in attempting to allege some fraudulent scheme by KDHS, illuminate the gaping holes in all of her lesser-plead theories of liability that follow after it..

Relator also alleges that "sometime in early 2015" she discovered that a medical oncologist was not "adequately documenting his treatment, assessment, and physicians' orders concerning patients "in accordance with CMS." *See*, Second Amended Complaint at ¶ 44. Relator does not identify the oncologist at issue, does not include any specifics as to the claims at issue (including type of procedure, date of service, billing codes, etc.), does not specify in what way the documentation was allegedly lacking, nor does she allege which "CMS" regulations were supposedly violated. Indeed, Relator does not even allege that these claims were, in fact, false or that they were ever presented to the government. Relator's only allegation is that this alleged practice was "holding up the processing of bills by the hospital's coding and billing department." *See id.* at 46.

Further, Relator alleges that KDHS engaged in improper billing related to fiducial markers used by the urology department. *See id.* at ¶ 47. Despite being told that the billing raised

"no compliance concerns," Relator alleges that KDHS was "illegally enticing the urologists to send patients to it" through the purchasing of fiducial markers. *See id.* at ¶ 48. Again, Relator does not allege how or why these actions were "illegal," does not identify any claims that were allegedly presented by KDHS to the government, does not identify any false record or statement, and does not identify any statute or regulation that was allegedly violated.

Relator next alleges that KDHS violated the "meaningful use" mandate for radiology orders. *See id.* at ¶50. However, again, Relator fails to identify any orders that were ever wrongfully made and fails to allege that any false claims were presented to the government. The most basic error in this theory is that Relator does not even specify which "meaningful use" standards were allegedly violated by KDHS.

Relator also makes vague allegations regarding an alleged lack of supervision for various procedures. Relator alleges that there was an issue involving physician coverage for medical oncology as a "supervising provider" as required "pursuant to CMS regulations" and that physicians were assigned to this role who were not qualified in Relator's personal opinion. *See id.* at ¶¶ 44-45. Relator believes there was also an issue about "direct supervision" by a physician being required for radiation therapy and that "CMS requirements" for direct supervision were not met due to Relator's belief that a physician was required to be "immediately available and interruptible to provide assistance and direction throughout the performance of the procedure." *See id.* at ¶ 48. However, in both theories, Relator does not allege that any procedures were actually billed without proper supervision. Relator does not allege any specific false claims presented, does not identify a false record or statement material to a false claim, does not allege what physicians were involved, nor does she identify which CMS requirements were allegedly violated.

Relator also alleges that, starting from at least January 19, 2010 to the present, KDHS allegedly billed CMS for full radiological reads when limited or follow up ultrasounds were performed. *See*, Second Amended Complaint at ¶ 73. Again, Relator does not support her claim in any way and cannot point to a single example to illustrate her claims. She alleges only that "one of the OB physicians" raised the issue during a discussion that occurred "sometime between 2007 and 2009." *See id.* at ¶ 75. Rather than specifically alleging that KDHS knew about these alleged improper acts, Relator again makes her allegation solely "upon information and belief," among other deficiencies in her pleading akin to the others detailed above. *See id.* at ¶ 76.

Finally, Relator includes a "catch-all" theory of liability at the end of her factual allegations in which she claims generally that "upon information and belief, there are additional unknown, but ongoing, fraudulent billing by KDHS to CMS and/or the United States, and specifically by or in relation to its radiology department, for unnecessary and/or inappropriate procedures." *See id.* at ¶ 68. This allegation is nothing more than a request to engage in a fishing expedition of the type Rule 9(b) was designed to prevent. This is now Relator's third attempt to state claims for violation of the FCA against KDHS. She has, again, failed. Relator cannot be permitted to use discovery in this case to try to manufacture some new theory of FCA liability against KDHS to avoid dismissal..

Relator alleges that, beginning in September 2015, she raised concerns relating to these matters during her employment with KDHS and that these actions led to her termination from employment with KDHS on October 5, 2015. *See id.* at ¶ 56-69. Shortly thereafter, on January 1, 2016, Relator filed her qui tam complaint. *See, generally,* Docket. This lawsuit remained under seal until September 23, 2016, when this Court unsealed Relator's Complaint after the Government filed its election to decline intervention on September 16, 2016. *See,* Order (Doc.

18). Relator filed her Amended Complaint on November 22, 2016 and the Court caused her Second Amended Complaint to be placed of record on March 27, 2017.

## III. LAW AND ARGUMENT

### A. The Standards Under Federal Rules 8, 9(b) and 12(b)(6)

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a plaintiff must allege facts that, if accepted as true, are sufficient "to raise a right to relief above the speculative level" and "state a claim to relief that is plausible on its face." *See*, *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *See, Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Though the Court must accept all well-pleaded factual allegations in a complaint as true, it need not "accept as true a legal conclusion couched as a factual allegation." *See Twombly*, 550 U.S. at 555 (citation omitted). Facially plausible complaints "allege more than labels and conclusions[;] . . . [the] factual allegations must be enough to raise a right to relief above the speculative level." *See id.*

Applying *Iqbal* and *Twombly*, a complaint alleging violation of the FCA requires more factual allegations than other complaints. Because it is an anti-fraud statute, claims under the FCA are "subject to the heightened pleading requirements of Rule 9(b) of the Federal Rules of Civil Procedure." *United States ex rel. Hanna v. City of Chicago*, 834 F.3d 775, 778-779 (7th Cir. 2016), citing *U.S. ex rel. Gross v. AIDS Research Alliance-Chicago*, 415 F.3d 601, 604 (7th Cir. 2005). This means that the relator must "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). To meet this standard, the relator must allege "the who, what, when, where, and how: the first paragraph of any newspaper story." *DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990); *See also United States ex rel. Lusby v. Rolls-*

*Royce Corp.*, 570 F.3d 849, 853 (7th Cir. 2009). That includes "the identity of the person making the misrepresentation, the time, place, and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff." *U.S. ex rel. Grenadyor v. Ukrainian Vill. Pharmacy, Inc.*, 772 F.3d 1102, 1106 (7th Cir. 2014) (citation omitted), cert. denied, 136 S. Ct. 49, 193 L. Ed. 2d 28 (2015).

Relators must "use some . . . means of injecting precision and some measure of substantiation into their allegations of fraud." *United States v. Acacia Mental Health Clinic*, LLC, 836 F.3d 770, 776 (7th Cir. 2016). The heightened possibility of mistake or bias supports the need for a higher standard of specificity for fraud compared to other civil litigation. *Id.* at 781. A relator's "subjective evaluation, standing alone, is not a sufficient basis for a fraud claim." *Id.* "Conclusory allegations" which "shed no light on the nature or content of the individual [statements] or why any particular false statement would have caused the government to keep the funding spigot open, much less when any payments occurred or how much money was involved" are not enough to meet the heightened particularity standards under Rule 9(b). *U.S. ex rel. Gross v. AIDS Research Alliance-Chicago*, 415 F.3d 601, 605 (7th Cir. 2005).

**B. Relator's FCA claim must be dismissed because Relator cannot satisfy the FCA's falsity, scienter, and materiality requirements.**

None of Relator's theories of liability have been plead with the particularity and plausibility required by the Civil Rules, let alone in the FCA context with the required falsity, scienter, and materiality. The elements a relator is required to prove in order to prevail on an FCA claim are: (1) that the defendant made a statement in order to receive money from the government; (2) that the statement was false; and (3) that the defendant knew the statement was false. *United States ex rel. Hanna v. City of Chicago*, 834 F.3d 775, 778 (7th Cir. 2016). Both FCA subsections share the following common elements: (1) a claim that was false or fraudulent;

(2) knowledge of the falsity (scienter); and (3) materiality. *See 31 U.S.C. §§3729(a)(1)(A) and (B); Universal Health Servs. v. United States ex rel.* Escobar, 136 S. Ct. 1989, 1996 (2016). False Claims Act relators must plead their claims with plausibility and particularity under Federal Rules of Civil Procedure 8 and 9(b). *Universal Health Servs.*, 136 S. Ct. at 2004, n.6.

The FCA's elements of materiality and knowledge (scienter) are "rigorous" and courts must enforce the pleading requirements for these elements at the motion to dismiss stage. *Id.* at 2003-04, n.6. Under applicable Seventh Circuit law, courts have held that "[i]nnocent mistakes or negligence are not actionable." *Hindo v. University of Health Sciences*, 65 F.3d 608, 613 (7th Cir. 1995)). As will be shown below, each of Relator's various theories of liability suffer from one or more flaws which, either on their own or in combination with other flaws, require dismissal by this Court.

First, Relator's FCA claim fails because she cannot show that the claims submitted by KDHS were objectively false. "The FCA requires proof of an objective falsehood." *United States ex rel. Polukoff v. St. Mark's Hosp.*, No. 2:16-cv-00304-JNO-EJF, 2017 U.S. Dist. LEXIS 8167, at *23 (D. Utah Jan. 19, 2017), quoting *United States ex rel. Morton v. A Plus Benefits, Inc.*, 139 F. App'x 980, 982 (10th Cir. 2005). Thus, liability "must be predicated on an objectively verifiable fact." *Id.* "Expressions of opinion, scientific judgments, or statements as to conclusions about which reasonable minds may differ cannot be false." *Id.*

Relator's theory that the second full radiological reads were improper amounts to nothing more than an allegation that the reads were medically unnecessary. However, Relator concedes that upon raising these concerns, KDHS representatives informed her that such reads were performed in the interest of "best patient care." *See*, Second Amended Complaint at ¶ 42. Thus, Relator's allegations are premised upon nothing more than her own unsupported judgment which

conflicts with the medical judgment of KDHS physicians who were actually performing the services. Where, as here, the verification of an alleged false claim relies upon clinical medical judgments, they cannot form the basis of an FCA claim. *Polukoff*, 2017 U.S. Dist. LEXIS 8167, at *23. This is due to the fact that such judgments are inherently ambiguous and therefore not subject to proof of objective falsehood. *Id.* A "mere difference of opinion between physicians, without more, is not enough to show falsity." *Id.* at *25, quoting *United States v. AseraCare Inc.*, 176 F. Supp. 3d 1282, 1283 (N.D. Ala. 2016). Relator is not herself a physician and, as such, her allegations are even more specious.

Relator's FCA claim must also fail due to Relator's inability to adequately link any of the allegedly fraudulent practices of KDHS to a particular false claim that was presented to the government. Indeed, the "sine qua non of a False Claims Act violation is the submission of a fraudulent claim." *Mason v. Medline Industries, Inc.*, No. 07 C 5615, 2009 U.S. Dist. LEXIS 43500, at *10 (N.D. Ill. May 22, 2009), citing *United States ex rel. Clausen v. Lab. Corp. of Am.*, 290 F.3d 1301, 1311 (11th Cir. 2002). Accordingly a relator has the burden to link specific allegations of deceit to claims for government payment. *Id.* citing *Garst v. Lockheed-Martin Corp.*, 328 F.3d 374, 378 (7th Cir. 2003). The relator cannot merely "describe a private scheme in detail but then . . . allege simply and without any stated reason for [her] belief that claims requesting illegal payments must have been submitted, were likely submitted or should have been submitted to the Government." *United States ex rel. Dolan v. Long Grove Manor, Inc.*, No. 10 C 368, 2014 U.S. Dist. LEXIS 98429, at *12 (N.D. Ill. July 18, 2014), citing *U.S. ex rel. Clausen v. Lab. Corp. of Am., Inc.*, 290 F.3d 1301, 1311 (11th Cir. 2002).

Relator's allegations in this case fail this test. While her Second Amended Complaint purports to describe a number of alleged improprieties by KDHS, Relator fails to link any of

these allegations to any false or fraudulent claim that was submitted to the government for payment or approval or any false record or statement material to a false or fraudulent claim. Relator's allegations are impermissibly vague. By way of example, rather than pointing to specific representative claims, Relator alleges only that

> Upon information and belief, starting at least from January 19, 2010 to the present, KDHS, directly, or through authorized agents, contractors, or others, has invoiced CMS and the United States, and the United States has paid to KDHS, for fraudulent billings in that KDHS has invoiced CMS and the United States for full radiological reads, while KDHS has, in fact, performed limited or follow up ultrasounds that should have been billed and reimbursed under different CPT codes.

*See*, Second Amended Complaint, at ¶ 73. The problems with this allegation in light of the case law discussed above are myriad. Relator has failed provide any detail which would allow the alleged fraudulent conduct to attach to any claim at an individualized transaction level, as required under Seventh Circuit law. She does not provide a single individual example to illustrate her beliefs, does not identify who submitted the claims, cannot narrow the window in which the claim was submitted to less than a six year period, and does not provide any detail regarding which CPT code was allegedly billed. Moreover, Relator's claims are premised entirely "upon information and belief," which, as stated previously, does not suffice to establish an FCA claim.

Likewise, Relator's allegation in paragraph seventy-six of the Amended Complaint is similarly devoid of the required particularized detail as to any false or fraudulent claim by KDHS. Relator alleges only that:

> Upon information and belief, both Mrs. Morgan and Mrs. Dozier are aware of this fraudulent billing, and have,[*sic*] failed to correct the same. Furthermore, since January 19, 2010, KDHS has fraudulently billed the United States significant amounts per year for these procedures.

*See*, Second Amended Complaint, at ¶ 76. Again, Relator's allegations are "upon information and belief" and fail to describe any individualized claim submitted by KDHS, fail to provide any details as to estimated amounts billed (either per year or per claim), fail to identify the physician or other individual responsible for billing such a claim, and fail to identify the procedure at issue or a time frame less than six years long.

Similarly, Relator's allegation in paragraph seventy-five that certain issues were raised "at some time between 2007 and 2009, at one of the committee meetings" by "one of the OB physicians" is utterly devoid of the type of specific allegations of fraud linked to specific claims for payment required to support an FCA allegation. Alleging that some nebulous issue was discussed at some unknown time within a three year window by unknown persons is nowhere near enough. Relator's FCA claim must be dismissed as she does not have the requisite facts to properly support a well pled claim for a violation of the FCA.

The purpose of the False Claims Act is to provide for restitution to the government for money taken from it by fraud. *Cause of Action v. Chi. Transit Auth.*, 815 F.3d 267, 272 (7th Cir. 2016). The FCA allows a private individual to bring suit on behalf of himself or herself as well as the Government. *31 U.S.C. § 3730(b)(1)*. Under the FCA, liability only arises where a person "knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval" or "knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim." *31 U.S.C. § 3729(a)(1)(A) and (B)*.

Not only are Relator's claims lacking any showing of objective falsity, in this case, Relator also cannot establish the requisite scienter. While Relator's Second Amended Complaint now alleges, in numerous paragraphs, that KDHS "knowingly presented, or caused to be presented, to the United States numerous false claims for payment", each of these bare

allegations is nothing more than a rote recitation of the statutory language, entirely unsupported by any context or detail. See, *e.g.*, Second Amended Complaint, ¶ 26. In numerous instances, Relator's allegations are based on nothing more than her own unsupported interpretations of unidentified laws and regulations. These interpretations were, as Relator admits, in direct contradiction to the interpretation of KDHS' compliance professionals.

By way of example, Relator admits in her Second Amended Complaint that her interpretation of laws and regulations relating to the payment by KDHS for fiducial markers for urologists was brought to the attention of and discussed with Margie Combs, the KDHS Director of Risk Management, Patient Safety, and Compliance in May of 2015. *See*, Second Amended Complaint at ¶¶ 15, 48. As a result of this report, Relator acknowledges that she was instructed by Ms. Combs that, due to the structure of the billing arrangement between KDHS and the urologists there were "no compliance concerns" raised by the arrangement. *See id.* at ¶ 48.

Likewise, Relator acknowledges that, upon raising a concern relating to order entry and "meaningful use" requirements, Rhonda Gosman, a charge master specialist at KDHS with extensive billing and coding expertise, advised that "there was support for billing from the Association of Community Cancer Centers that she discovered while attending the National Oncology Conference." *See*, Second Amended Complaint at ¶¶ 11, 54.

Relator does not allege why her beliefs on these and her other theories of liability are correct and KDHS's are not, nor does she indicate which regulations were allegedly violated or whether her contradictory beliefs in any instance are supported by any law, rule, regulation, official guidance or interpretation. Rather than supporting her theories that KDHS acted "knowingly" in submitting allegedly false claims, Relator's allegations reflect the opposite. To the extent KDHS compliance personnel reached differing conclusions from Relator regarding her

concerns is not an allegation that supports that KDHS had the required scienter. Quite the contrary, it is an allegation that, at most, there were differences of opinion between Relator and other KDHS employees. As such, Relator's allegations do not establish that KDHS acted with the requisite scienter to support an FCA claim.

Not only does Relator's FCA claim fail due to her inability to identify a false claim that was submitted by KDHS and her inability to show that KDHS acted with the required scienter, but it also fails due to Relator's inability to allege or show that the alleged falsity of any such claim would have been material to the government's decision to pay the claim. In *Universal Health Servs. v. United States ex rel. Escobar*, the United States Supreme Court reiterated that "False Claims Act plaintiffs must [] plead their claims with plausibility and particularity under Federal Rules of Civil Procedure 8 and 9(b)[.]" *Universal Health Servs. v. United States ex rel.* Escobar, 136 S. Ct. 1989, 2004, n.6 (2016). It bears repeating that the Court explained that the FCA's elements of materiality and knowledge (scienter) are "rigorous" and that courts must enforce the pleading requirements for these elements at the motion to dismiss stage. *Id.* at 2003-04, n.6.

Count I of Relator's Second Amended Complaint continues to rely upon the pre-FERA version of the FCA and, as such, fails to allege, let alone make any showing of materiality, a required element under the current version of the FCA. Under the current version of the FCA, in order to be actionable, "a misrepresentation about compliance with a statutory, regulatory, or contractual requirement must be material to the Government's payment decision." *Universal Health Servs. v. United States ex rel. Escobar*, 136 S. Ct. 1989, 2002 (2016). Relator's allegations in Count I of her Second Amended Complaint continues to allege instead that KDHS "knowingly made, used, or caused to be made or used, a false record or statement to get a false

or fraudulent claim paid or approved by the Government." *See*, Second Amended Complaint, at ¶ 82.

This language was modified under FERA in 2009 and now requires the defendant to have "knowingly made, used, or caused to be made or used, a false record or statement ***material to*** a false or fraudulent claim." 31 U.S.C. §3729(a)(1)(B). Relator's only acknowledgment of this requirement is a bare allegation stating that the United States would not have paid the claims in question had it "known the truth of KDHS' claims and compliance status" and a summary conclusion that the alleged "false certifications and absence of disclosure to the United States are material." *See,* Second Amended Complaint, ¶ 83. Simply arguing that something is material to the Government's decision to pay does not make it so. This rote recitation of the legal requirements fails to meet the standard required to properly plead an FCA claim.

In the months since *Escobar* was decided, the Seventh Circuit has followed the Supreme Court's mandate, embracing both the importance of rigorous enforcement of the policies underlying the pleading requirements of Rule 9(b) and the "rigorous" and "demanding" standard for materiality. *Id.* at 447. Where, as here, a relator simply alleges, but does not allege sufficient facts establishing that the government's decision to pay would likely or actually have been different had it known of the alleged regulatory noncompliance, no liability can be imposed under the FCA.

Relator has not met the pleading standard for materiality, which requires particular facts supporting a plausible inference that the alleged false statements were "so central to the provision" of services that the Government "would not have paid these claims had it known of these violations." See *Universal Health Servs.*, 136 S. Ct. at 2004. Allegations showing "materiality can include, but [are] not necessarily limited to, evidence that the defendant knows

that the Government consistently refuses to pay claims . . . based on noncompliance with the particular statutory, regulatory, or contractual requirement." *Id.* at 2003. A relator must also allege sufficient facts to show that the defendant knew the requirement at issue was material to the Government's payment decision. *Id.* at 1996. Relator has not alleged any such thing, instead simply making repeated legal allegations unsupported by any facts.

Relator's primary theory of liability for her FCA claim -- that radiologists within KDHS improperly conducted unnecessary secondary diagnostic scans for radiation treatment planning – is fatally flawed. It does not allege that KDHS somehow hid its conduct from the government or that the government was unaware of KDHS's practices. Indeed, per Relator's allegations, KDHS billed both the initial diagnostic scan and the later full radiation treatment planning scan and, in doing so, necessarily made no effort to disguise its conduct or mislead the government. *See*, Second Amended Complaint, at ¶ 24.

Moreover, Relator alleges in her Second Amended Complaint that KDHS's improper billing practices began "since at least January 19, 2010" and continued for at least five years until her termination in October, 2015. *See id*. Throughout this entire period, the government continued to approve and pay all of the claims submitted by KDHS. Under Seventh Circuit authority, the government's conduct is relevant to assessing materiality. *See*, *e.g.*, *U.S. ex rel. Lusby v. RollsRoyce Corp.*, 570 F.3d 849, 855 (7th Cir. 2009) (stating that if the government knew of alleged "inferior" products being provided under a contract and chose to accept them anyway, no FCA liability could attach). Where the government is aware of the defendant's actions (by virtue of claims submitted) and continues to pay the claims, this is strong evidence that any alleged falsity was immaterial to the government's decision to pay. Under any understanding of the concept, materiality "look[s] to the effect on the likely or actual behavior of

the recipient of the alleged misrepresentation." *Universal Health Servs. v. United States ex rel. Escobar*, 136 S. Ct. 1989, 2002 (2016).

In this case, Relator has alleged that KDHS openly submitted claims that were not permitted for many years, making no attempt to hide its actions, and that government approved payment on those claims during the entire time period. When presented with Relator's allegations in her original complaint, after conducting its own inquiry, the government declined to intervene in the case. This decision by the Department of Justice to decline to intervene to prosecute this claim on its own behalf is further evidence that any allegedly false claim as concocted by Relator was not material to its decision.

**C. Relator's FCA claim must be dismissed for failure to plead fraud with the required particularity.**

In addition to and intertwined with the issues discussed above, Relator's Second Amended Complaint must also be dismissed for failure to comply with the "particularity" requirement set forth under Fed. R. Civ. P. 9(b). The FCA is an anti-fraud statute and claims under it are subject to the heightened pleading requirements of Rule 9(b) of the Federal Rules of Civil Procedure. *United States ex rel. Gross v. Aids Research Alliance-Chicago*, 415 F.3d 601, 604 (7th Cir. 2005), citing *United States ex rel. Garst v. Lockheed-Martin Corp.*, 328 F.3d 374, 376 (7th Cir. 2003) (Rule 9(b) applies "because the False Claims Act condemns fraud but not negligent errors or omissions.")

Complaints alleging FCA violations must comply with Rule 9(b)'s requirement that fraud be pled with particularity because of the stigmatic injury that potentially results from allegations of fraud. *United States v. Acacia Mental Health Clinic*, LLC, 836 F.3d 770, 776 (7th Cir. 2016), citing *United States ex rel. Bogina v. Medline Indus., Inc.*, 809 F.3d 365, 370 (7th Cir. 2016). As courts have observed, the requirement that fraud be pleaded with particularity exists because "a

public accusation of fraud can do great damage to a firm before the firm is (if the accusation [is] prove[d] baseless) exonerated in litigation . . . ." *Id.* citing *United States ex rel. Grenadyor v. Ukrainian Vill. Pharmacy, Inc.*, 772 F.3d 1102, 1105 (7th Cir. 2014).

Under Rule 9(b), the relator must "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). To meet this standard, the Seventh Circuit has long required the relator alleging a claim under the FCA to allege "the who, what, when, where, and how: the first paragraph of any newspaper story." *DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990); *See also United States ex rel. Lusby v. Rolls-Royce Corp.*, 570 F.3d 849, 853 (7th Cir. 2009). That includes "the identity of the person making the misrepresentation, the time, place, and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff." *U.S. ex rel. Grenadyor v. Ukrainian Vill. Pharmacy, Inc.*, 772 F.3d 1102, 1106 (7th Cir. 2014) (citation omitted), *cert. denied*, 136 S. Ct. 49, 193 L. Ed. 2d 28 (2015).

As the Seventh Circuit made clear in *United States ex rel. Grenadyor v. Ukrainian Vill. Pharm., Inc.*, "the requirement of pleading fraud with particularity includes pleading facts that make the allegation of fraud plausible." 772 F.3d 1102, 1106 (7th Cir. 2014) In examining this requirement, the Seventh Circuit held that the relator's complaint in that case failed to include "non-conclusory allegations" that would have established each of the elements of an FCA violation with the required particularity under Rule 9(b). *Id.* In particular, the court in *Grenadyor* held that "it is not enough to allege, or even prove, that the pharmacy engaged in a practice that violated a federal regulation. Violating a regulation is not synonymous with filing a false claim." *Id.*, at 1107. Rather, a relator alleging an FCA violation must set forth particular facts as to each element which would support a plausible allegation of fraud.

Relator's Second Amended Complaint fails this test. While Relator's Second Amended Complaint appears to be quite detailed at first glance, a closer look reveals glaring omissions in her allegations. Relator's Second Amended Complaint fails to provide any description or allegation of an actual specific false claim presented to the government for payment or approval, or any false record or statement made, used or caused to be made or used that was material to a false claim, or even any interactions with the government at all. Relator's Second Amended Complaint contains no dates of claims, no amounts, no certifications by KDHS, and no descriptions of any specific procedures. Relator does not identify what makes any claim submitted by KDHS false. Without any allegation of falsity connected to a claim for payment, it is impossible to decipher exactly what certification(s) Relator alleges KDHS knowingly made knowing they were false when made. *See United States ex rel. Hanna v. City of Chicago,* 834 F.3d 775, 779-780, 2016 U.S. App. LEXIS 15400, *10-13 (7th Cir. Ill. 2016) (holding that "[i]f the particularity requirement is meant to ensure more thorough investigation before filing, it is not too much to ask that one aspect of that investigation include the specific provisions of law whose violation made the certification of compliance false.) "Conclusory allegations" which "shed no light on the nature or content of the individual [statements] or why any particular false statement would have caused the government to keep the funding spigot open, much less when any payments occurred or how much money was involved" are not enough to meet the heightened particularity standards under Rule 9(b). *U.S. ex rel. Gross v. AIDS Research Alliance-Chicago*, 415 F.3d 601, 605 (7th Cir. 2005).

Here, Relator's allegations that date back to January 19, 2010 are impermissibly vague, describing conduct that allegedly occurred over a six year period, without providing any particularity as to dates or even providing this Court with a single example of an allegedly false

claim. Rather than pointing this Court to any specific information or context which would allow KDHS and this Court to ascertain whether a claim that was actually submitted to the government was false, Relator's new allegations continue to allege that some unknown amount of false claims were submitted on some unspecified date over a six year period. Relator offers none of the required particularity under Seventh Circuit law. Indeed, all Relator's amendment to her claims has done is limit them to the maximum six year limit pursuant to the applicable statute of limitations, as Relator first filed her original Complaint six years after January 19, 2010. It is impossible to determine from Relator's allegations when any allegedly false claims were submitted within this six year statutory period on any of her theories of liability.

The Seventh Circuit in *Acacia* provided this Court with a road map as to how to proceed as to Relator's Second Amended Complaint. In *Acacia*, the Seventh Circuit affirmed dismissal of all but one of the relator's alleged theories of liability against the defendant. The one theory upon which the Seventh Circuit permitted the relator in *Acacia* to proceed contained far more detail than any of these theories of liability Relator alleges against KDHS, including Relator's primary theory of liability premised on the alleged improper billing of a second full radiology read. Relator's claims of fraud against KDHS in this case are charged by a disgruntled former employee looking for someone to blame for her termination other than herself -- a factor acknowledged by the Seventh Circuit in *Acacia* that should not be overlooked here. In *Acacia*, the Seventh Circuit reasoned, in pertinent part:

> **Not only does the lack of context make these allegations too indefinite, but each of the allegations depends entirely on [relator's] personal estimation—an estimation that is not supported in any concrete manner. Many potential relators could claim that "in my experience, this is not the way things are done."** However, relators may not be in a position to see the entire picture or may simply have a subjective disagreement with the other party on the most prudent course of action. **Further, their perspective may be colored by considerable bias or self-interest, such as in the case of a disgruntled employee. The**

> **heightened possibility of mistake or bias supports the need for a higher standard of specificity for fraud compared to other civil litigation.** See, e.g., *Fid. Nat'l Title Ins. Co.*, 412 F.3d at 749 (noting that Rule 9(b) "forces the plaintiff to conduct a careful pretrial investigation and thus operates as a screen against spurious fraud claims"); *Ackerman*, 172 F.3d at 469. ("[F]raud is frequently charged irresponsibly by people who have suffered a loss and want to find someone to blame for it."); *Uni*Quality, Inc.*, 974 F.2d at 924 ("Rule 9(b) ensures that a plaintiff have some basis for his accusations of fraud before making those accusations and thus discourages people from including such accusations in complaints simply to gain leverage for settlement or for other ulterior purposes.").

*Id.* at 780-781 (emphasis added).

Like the relator in *Acacia*, Relator's subjective evaluation is not a sufficient basis for her FCA claims and she alleges nothing else that would satisfy her pleading obligation. Relator must be held to a higher standard under Rule 9(b). Relator would have this Court disregard the Civil Rules and allow Relator's Second Amended Complaint to survive despite the fact that her vague allegations depend entirely on her own personal estimations – estimations that are not supported in any concrete manner and do not satisfy the heightened pleading standards. A relator must provide some objective context, whether medical, technical, or scientific, which would enable the reader of a complaint to understand how the alleged actions are impermissible. *Acacia Mental Health Clinic, LLC*, 836 F.3d at 780. Her own personal opinion is simply not sufficient.

Relator's claims in this case contain even less detail than those of the relator in *Acacia*. Relator here has not offered a single statute or regulation which she claims was violated, nor has she explained in any way why she believes the procedures at issue were unnecessary or why the claims were otherwise improper. Unlike the relator in *Acacia*, Relator does not even offer her own knowledge or experience to support her allegations. Instead, she relies on a vague description of an email (which she does not provide and does not describe with any level of specificity) that purportedly states that other hospitals were allegedly not billing in the same manner as KDHS. See, Proposed Second Amended Complaint, ¶ 28. These allegations, asserted

by a disgruntled employee following her termination, are precisely the sort of indefinite and unsupported claims, colored by possible bias, self-interest, or mistake that the court in *Acacia* recently found were not enough to satisfy Rule 9(b).

Similarly, in the *United States ex rel. Lusby v. Rolls-Royce Corp.* case, the Seventh Circuit examined a case where the facts were pled with far more particularity than Relator has alleged in this case and dismissed certain claims on the ground that these claims did not plead fraud with the particularity required by Fed. R. Civ. P. 9(b). *United States ex rel. Lusby v. Rolls-Royce Corp.*, 570 F.3d 849, 853 (7th Cir. 2009). In examining the various allegations, the court found that the relator's claims that were supported by detailed allegations as to specific part numbers, specific shipment dates, details of payment, five specific contracts, descriptions of test results allegedly confirming the relator's suspicions, specific allegations as to the certifications that were made, and allegations as to the specific regulation that was violated, satisfied Rule 9(b). *Id.* at 853-854. However, the Seventh Circuit also held that the relator's other more generalized allegations that "all of the parts were substandard" were not sufficiently pled and, therefore, upheld dismissal of those allegations for failure to satisfy Rule 9(b) because the complaint did not "offer any reason to think that Rolls-Royce committed fraud." *Id.* at 855. Such is the case presently before this Court – Relator has not identified any false statement by KDHS to support Count I of her Amended Complaint, let alone the level of detail alleged by the relator in *Lusby*. Accordingly, Relator has not offered any reason to think that KDHS committed fraud with the particularity required by Rule 9(b).

Elsewhere in the proposed Second Amended Complaint, Relator makes similar allegations to support her theories with even less detail. For example, Relator now adds an allegation that an arrangement involving a urologist group and the billing for fiducial markers

constituted an "illegal enticement" which rendered KDHS's submission of claims to the government false. *See*, Second Amended Complaint, ¶ 49. Again, Relator fails to identify a single statute or regulation that was violated, instead alleging only that the arrangement was not "in compliance with federal standards." *Id.* Far from asserting well pleaded and factually supported allegations demonstrating that any claims were false, Relator's Second Amended Complaint alleges, at best, a "subjective disagreement with the other party on the most prudent course of action" of the type the Seventh Circuit previously found to be lacking in *Acacia*. *Acacia Mental Health Clinic*, LLC, 836 F.3d at 780. Relator's allegations demonstrate that Relator has not conducted the type of "careful pretrial investigation" required by Rule 9(b). *Id.*

Relator also claims broadly that KDHS violated the "meaningful use mandate." Perhaps Relator fails to appreciate what it is that she is alleging. "Meaningful use" refers to various regulations that have been phased in over three stages from 2001 through the present and which establish numerous requirements and objectives that eligible professionals and hospitals must accomplish in order to qualify and remain eligible for certain CMS incentive programs. Relator's vague allegation that the "meaningful use mandate" was not met does not begin to meet the standard for particularity under Rule 9(b). Relator does not allege what aspect of the "meaningful use mandate" was allegedly violated, does not offer any detail about the claims allegedly submitted in violation of the mandate, does not allege how any claims were purportedly false, and does not allege when such claims were submitted with any more specificity than simply alleging that they occurred sometime within the six-year statutory period commencing "from January 19, 2010 to the present." *See*, Second Amended Complaint, ¶ 50.

Similarly, Relator's new allegations in her Second Amended Complaint that KDHS billed for procedures which were allegedly ordered by "physicians . . . who did not have privileges to

order the procedure in question" are impermissibly vague and fail under the heightened standards of Rule 9(b). *See*, Second Amended Complaint, ¶ 52. Relator does not make any attempt to specify what these "procedures in question" were or how those physicians were not qualified to make the orders they did. She also does not identify when such claims were allegedly submitted. Relator's new allegations do nothing to place KDHS on notice as to which claims or procedures are the subject of her allegations and do nothing to cure the deficiencies of her previous Amended Complaint. Again, Relator's "subjective evaluation, standing alone, is not a sufficient basis for a fraud claim." *Acacia Mental Health Clinic*, LLC, 836 F.3d at 781.

Moreover, while Relator is not required to "list every single patient, claim, or document involved," under long established Seventh Circuit authority, she must offer "at least some representative examples." *United States ex rel. Dolan v. Long Grove Manor, Inc.*, No. 10 C 368, 2014 U.S. Dist. LEXIS 98429, at *10 (N.D. Ill. July 18, 2014) These representative examples of fraudulent conduct must be pled with the requisite level of specificity "*at an individualized transaction level*." *Id.* at *11 (quoting *United States ex rel. Fowler v. Caremark R.X. L.L.C.*, 496 F.3d 730, 740-41 (7th Cir. 2007) (emphasis in original). Further, the specific allegations of deceit must be linked to specific claims for payment. *Dolan*, 2014 U.S. Dist. LEXIS 98429, at *12.

Relator's Second Amended Complaint fails to provide this required level of particularity. She has failed to provide even a single representative example to take her claims from a generalized allegation of wrongdoing to an actual well pled claim under Rule 9(b). This requirement for Relator to submit a representative example in order to state an FCA claim under Rule 9(b) holds true

> even when, as here, a relator alleges that a defendant has engaged in a scheme involving numerous fraudulent transactions over a period of years. [Relator] need not plead specifics with respect to every instance of fraud, but he must at least provide representative examples. He has not done so. [Relator] has failed to

> identify the date, amount, content, or payment for any single false claim. Accordingly, he has not stated his claims with sufficient particularity under Rule 9(b).

*Singer v. Progressive Care, SC*, No. 11-cv-02679, 2016 U.S. Dist. LEXIS 106454, at *18 (N.D. Ill. Aug. 11, 2016) (citations omitted).

This Court's decision in *Abner v. Jewish Hosp. Health Care Servs.*, 2008 U.S. Dist. LEXIS 61985 (S.D. Ind. 2008) is also illustrative of the deficiencies in Relator's Second Amended Complaint. In *Abner*, this Court reviewed an amended complaint filed by a relator in which multiple examples of alleged false claims were provided, including redacted patient numbers and dates of service for several (but not all) of the claims set forth in the amended complaint. After examining each claim, this Court ultimately allowed only those claims for which the relator pled specific examples of patently fraudulent conduct to proceed, while dismissing those claims for which the relator either could not point to any examples or did not allege violations of specific statutes or regulations where the falsity of the alleged claim was not patently clear. *Abner*, at *16-22. This Court also dismissed the relator's claims relating to an alleged false certification where the relator did not "point to any specific regulation requiring certification before dispensation of payment, let alone point to one that defendants allegedly violated." *Id.*, at 23. Relator's claims in this case are supported by even less detail than those provided by the relator in *Abner*. Relator has not provided this Court with a single example of a false claim and has not cited to a single regulation or statute that KDHS is alleged to have violated. Moreover, like the relator in *Abner*, Relator in this case has failed to provide any "specific regulation requiring certification before dispensation of payment" that is alleged to have been violated by KDHS. Instead Relator repeatedly alleges only generally that "KDHS is required to, and does, make certain certifications, including certifications that the procedure in

question was in compliance with CME rules, regulations, and guidelines" without providing any further detail as to her allegations. See, *e.g.*, Second Amended Complaint, ¶ 20.

Without any allegation of falsity connected to a claim for payment, it is impossible to decipher exactly what certification(s) Relator alleges KDHS knowingly made knowing they were false when made. *See United States ex rel. Hanna v. City of Chicago*, 834 F.3d 775, 779-780, 2016 U.S. App. LEXIS 15400, *10-13 (7th Cir. Ill. 2016) (holding that "[i]f the particularity requirement is meant to ensure more thorough investigation before filing, it is not too much to ask that one aspect of that investigation include the specific provisions of law whose violation made the certification of compliance false.)

Additionally, as discussed above, many of Relator's allegations are premised "upon information and belief," further demonstrating that Relator has no evidence of an actual false claim, despite the window dressing of detail she has sprinkled throughout her Second Amended Complaint. "Allegations based on 'information and belief' . . . won't do in a fraud case—for 'on information and belief' can mean as little as 'rumor has it that . . . .'" *United States ex rel. Bogina v. Medline Indus., Inc.*, 809 F.3d 365, 370 (7th Cir. 2016). Pleading fraud on information and belief is only permissible when "(1) the facts constituting the fraud are not accessible to the plaintiff and (2) the plaintiff provides the grounds for his suspicions." *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. Walgreen Co.*, 631 F.3d 436, 442-43 (7th Cir. 2011).

Here, Relator served in various positions with KDHS for sixteen years and served as Director of the KDHS Cancer Center for the last eight years of her employment. As such, Relator cannot plausibly claim that the facts supporting her allegations were "not accessible" to her, such that her pleading "upon information and belief" would be permissible. Indeed, in her position as Director, Relator likely had at her disposal more information regarding her allegations relating to

the oncology services provided at KDHS than any other individual within KDHS. As Director, she could have easily requested any information required to plead these claims at any time. As such, any claims premised upon information and belief in Relator's Amended Complaint must be dismissed.

**D. Relator's conspiracy claim must likewise be dismissed for failure to plead fraud with the required particularity.**

In addition to the grounds set forth above for dismissal of Relator's FCA claim, Relator's conspiracy claim (Count II) must be dismissed, as it is likewise barred for failure to plead the underlying fraud with particularity. The FCA confers liability on those who "conspire[] to commit a violation of subparagraph (A), (B) . . . ." 31 U.S.C. § 3729(a)(1)(C). To plead a conspiracy claim, the relator must allege an agreement by two or more persons to accomplish a goal or goals and an act in furtherance of that agreement. *United States ex rel. Morison v. Res-Care, Inc.*, 2017 U.S. Dist. LEXIS 15917, *9-10 (S.D. Ind. 2017), citing *Indep. Trust Corp. v. Stewart Info. Servs. Corp.*, 665 F.3d 930, 938-39 (7th Cir. 2012). Under Seventh Circuit law, an alleged conspiracy to defraud is held to Rule 9(b)'s heightened pleading standards. *Id.*, at *10; *Goldberg v. Rush Univ. Med. Ctr.*, 929 F. Supp. 2d 807, 825 (N.D. Ill. 2013) (citing *DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990)) (dismissing quit tam fraud claim where relator "fail[ed] to allege with specificity what they conspired to do, when, where, or how").

In *United States ex rel. Morison v. Res-Care, Inc.*, this Court held earlier this year that a relator's allegations regarding an alleged conspiracy to defraud pursuant to 31 U.S.C. § 3729(a)(1)(C) were not properly pled and dismissed them pursuant to Rule 9(b) after finding that relator had failed to identify an act in furtherance of the conspiracy.[1] *Morison*, at *10 (S.D. Ind. 2017). Key to this Court's opinion in that matter was that the relator failed to identify the persons

[1] Relator's counsel should be well acquainted with this Court's previous findings as to this requirement, as one of them also served as relator's counsel in *Morison*.

involved, when the actions in furtherance of the alleged conspiracy were undertaken, who filed the allegedly false claims, the method by which the claims were filed, and the amount of payment. *Id.* See also, *United States ex rel. Walner v. NorthShore Univ. Healthsystem*, 660 F.Supp.2d 891, 898 (N.D. Ill. 2009) (dismissing FCA claim where relator "fails to plead who agreed with whom, how they agreed, how they decided to file a false claim, who made the alleged misrepresentation, who filed the allegedly false claim, the method by which it was filed, and how much the payment was for").

Here, Relator's conspiracy claim fares no better than the relator's claim in *Morison*. While Relator's Second Amended Complaint adds, for the first time, the names of the radiologists who allegedly conducted the second diagnostic reads for radiation treatment that form the first theory of liability for Relator's FCA allegations, she fails to identify with whom at KDHS they conspired, when the actions allegedly occurred, who at KDHS filed the claims, how or when the claims were submitted, or the amounts of these claims. Instead relator offers only the names of the radiologists working at KDHS and a vague, unspported allegation that "upon information and belief" the claims were for "approximately" $375 for some unknown, but "significant percentage" of Medicare/Medicaid patients seen at KDHS over an unknown time period commencing "since at least January 19, 2010." *See*, Second Amended Complaint, at ¶¶ 22-24. None of this is sufficient. Relator's conspiracy allegation fails to allege any of the facts that make up the alleged conspiracy with any of the particularty required under Rule 9(b).

**E. Relator fails to state a claim for retaliation under the FCA.**

Where, as here, the Relator has failed to sufficiently plead underlying violations of the FCA, the Court cannot conclude that the allegations support a finding that that Relator was acting in furtherance of an FCA enforcement action or other efforts to stop violations of the FCA

and a claim for retaliation under the FCA must be dismissed. *Singer v. Progressive Care, SC*, 2016 U.S. Dist. LEXIS 106454 *25 (N.D. Ill. August 11, 2016), citing *United States ex rel. McGinnis*, 2014 U.S. Dist. LEXIS 89167 at *35. In *Singer*, all of the relator's FCA-based claims, including conspiracy and retaliation, brought post-FERA amendment to the retaliation statute found at 31 U.S.C. §3730(h)(1), were dismissed on factual allegations more detailed than those alleged by Relator in her Second Amended Complaint. *Id*.

As shown above, Relator has failed to sufficiently plead any violation of the FCA. Relator made no allegations beyond the formulaic recitation of statutory language that her actions were undertaken as "other efforts to stop" violations of the FCA. Moreover, KDHS would submit that Relator was an employee "charged with discovering fraud in the normal course of her job duties" as the Director of the Cancer Center and, as a so-called fraud alert employee, Relator must be held to a heightened standard of notice to the employer regarding any concerns she had about alleged fraud or illegality. See *Fanslow v. Chi. Mfg. Center, Inc.*, 384 F.3d 469, 480 (7th Cir. 2004). Accordingly, Relator's claim for retaliation must likewise be dismissed.

**F. The Court should decline supplemental jurisdiction over Relator's state law claim for wrongful termination.**

Because Relator has failed to state a claim under federal law, the Court should decline to exercise supplemental jurisdiction over the state law count. 28 U.S.C. § 1367(c). As the Seventh Circuit has explained in similar circumstances to the one presented here, where the court has dismissed all claims over which it has original jurisdiction, the court has discretion to decline to exercise supplemental jurisdiction. 28 U.S.C. § 1367(c)(3); see also *United States ex rel. Frawley v. McMahon*, 2016 U.S. Dist. LEXIS 133907, *45-46 (N.D. Ill. September 28, 2016), citing *Miller v. Herman*, 600 F.3d 726, 738 (7th Cir. 2010) (noting that the decision to exercise

supplemental jurisdiction is "squarely within [the district court's] discretion). The general rule is that when all federal claims are dismissed, the district court should decline to exercise supplemental jurisdiction over the state law claims. *Id.*, citing *Davis v. Cook Cty.*, 534 F.3d 650, 654 (7th Cir. 2008). As Relator has failed to sufficiently plead a violation of the FCA, this Court should decline to exercise supplemental jurisdiction over her pendant state law claim and dismiss it.

## IV. CONCLUSION

For all of these reasons, Defendant The Bethany Circle of King's Daughters' of Madison Indiana, Inc. d/b/a The King's Daughters' Hospital and Health Services respectfully requests that this Court dismiss Relator's Second Amended Complaint for failure to state a claim upon which relief may be granted, pursuant to Civ. R. 12(b)(6), and for failure to plead her claims with the requisite particularity and plausibility, pursuant to Civ. R. 8 and 9(b). Plaintiff's FCA claim, Count I, must be dismissed for failure to satisfy the falsity, scienter, and materiality requirements of the FCA and for failure to plead with the requisite particularity. Plaintiff's conspiracy claim, Count II, must likewise be dismissed for failure to plead with the requisite particularity. Plaintiff's FCA retaliation claim, Count IV, must be dismissed for failure to state a claim, as Relator cannot establish any underlying violation of the FCA that would support a finding that that Relator was acting in furtherance of an FCA enforcement action or other efforts to stop violations of the FCA. Finally, this Court should decline to exercise supplemental jurisdiction over Plaintiff's pendant state law claim for wrongful termination, Count III, as Relator has not alleged any valid federal claims that survive dismissal.

Respectfully submitted,

s/ Jennifer Orr Mitchell

Michael W. Hawkins (0012707)
Jennifer Orr Mitchell (0069594)
Matthew S. Arend (0079688)
DINSMORE & SHOHL LLP
1900 Chemed Center
255 East Fifth Street
Cincinnati, Ohio 45202
Phone: (513) 977-8200
Fax.: (513) 977-8141

***Counsel for Defendant The Bethany Circle of King's Daughters' of Madison Indiana, Inc. d/b/a The King's Daughters' Hospital and Health Services***

**CERTIFICATE OF SERVICE**

I hereby certify on this 10th day of April 2017 that a true and correct copy of the foregoing document was served on all registered parties through the CM/ECF system:

s/ Jennifer Orr Mitchell

Jennifer Orr Mitchell (0069594)