**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**NEW ALBANY DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA ex rel. JESSICA KIETZMAN**<br><br>**Plaintiffs,**<br><br>v.<br><br>**THE BETHANY CIRCLE OF KING'S DAUGHTERS' OF MADISON, INDIANA, INC. d/b/a The King's Daughters' Hospital and Health Services,**<br><br>**Defendant.** | : | Case No. 4:16-CV-00009-SEB-DML<br><br>District Court Judge Sarah Evans Barker<br>Magistrate Judge Debra McVicker Lynch<br><br>**DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS RELATOR'S SECOND AMENDED COMPLAINT** |

## I. INTRODUCTION

KDHS has provided this Court with an inventory of recent False Claims Act ("FCA") cases in this Circuit that have rightly dismissed claims alleged with far more detail than those set forth in Relator's Second Amended Complaint. *See, e.g., United States v. Acacia Mental Health Clinic*, LLC, 836 F.3d 770 (7th Cir. 2016); *United States ex rel. Hanna v. City of Chicago*, 834 F.3d 775 (7th Cir. 2016); *U.S. ex rel. Grenadyor v. Ukrainian Vill. Pharmacy, Inc.*, 772 F.3d 1102 (7th Cir. 2014); *United States ex rel. Lusby v. Rolls-Royce Corp.*, 570 F.3d 849 (7th Cir. 2009); *Abner v. Jewish Hosp. Health Care Servs.*, 2008 U.S. Dist. LEXIS 61985 (S.D. Ind. 2008). The United States Supreme Court's edict in *Escobar* was clear: the lower courts must enforce the "rigorous and demanding standard for materiality at the pleading stage. *See Universal Health Servs. v. United States ex rel. Escobar*, 136 S. Ct. 1989, 2003-04 (2016).

Relator's opposition to KDHS's motion to dismiss exposes her continued fundamental misunderstanding of the applicable legal standards, including dispositive Seventh Circuit and United States Supreme Court precedents. Relator fails to appreciate and would have this Court

ignore the myriad deficiencies in her Second Amended Complaint. Now on her third attempt, Relator still has not plead her claims with the particularity and plausibility required by Civil Rules 8, 9(b), and 12(b)(6), her hyperbolic rhetoric and vitriolic attacks on KDHS notwithstanding.

Relator's Second Amended Complaint contains none of the "ascertainable standard or . . . context" required to state an FCA claim, nor does it contain the "precision and some measure of substantiation" required by Seventh Circuit courts. *See, United States v. Acacia Mental Health Clinic*, LLC, 836 F.3d 770, 776 and 780-781 (7th Cir. 2016). The Seventh Circuit has long held that a relator in a False Claims Act ("FCA") qui tam case must allege "the who, what, when, where and how" of each and every alleged basis upon which her claims are premised. *United States ex rel. Lusby v. Rolls-Royce Corp.*, 570 F.3d 849, 853 (7th Cir. 2009). It is incumbent upon a relator to plead more than "conclusory allegations" based upon her own "subjective evaluation" standing alone. *United States ex rel. Gross v. AIDS Research Alliance-Chicago,* 415 F.3d 601 (7th Cir. 2005); *United States v. Acacia Mental Health Clinic LLC*, 836 F.3d 770 (7th Cir. 2016). Relator has not done so and cannot do so.

Relator should not be given a fourth bite at the apple. Relator requests yet another chance to plead her claims, despite admitting that she "does not, at present, have more details on the specifics" of the "widespread fraud" she claims to have uncovered. More than that, she asks this Court to allow her claims to proceed so that she can engage in a fishing expedition. *See*, Relator's Opposition, p. 18, fn. 4. This Court's order granting Relator leave to file her Second Amended Complaint made clear that although "a district court ordinarily should allow a plaintiff one opportunity to amend her complaint after a dismissal…[b]y permitting Ms. Kietzman pre-emptively to amend her complaint, the court is in essence allowing her that opportunity now

instead of later." *See*, Order on Motion for Leave to File Second Amended Complaint, Docket #64, p. 3. Relator's Second Amended Complaint still does not satisfy the legal requirements for pleading FCA claims. As a result, all of Relator's claims against KDHS must be dismissed.

## II. LAW AND ARGUMENT

### A. Application of the controlling precedent established in *Acacia* and *Lusby* requires dismissal.

Relator's Second Amended Complaint does not identify a single statute or regulation that was purportedly violated by KDHS, even after KDHS placed her on notice of this glaring deficiency. Rather, Relator attempts to make much of cases that allow for "inferential" knowledge to be relied upon in certain limited instances not present here, in an attempt to gloss over the deficiencies in her claims. Relator cites to the Seventh Circuit's decisions in *Acacia* and *Lusby* for the proposition that "[c]ourts have . . . not required a plaintiff to plead each and every false claim to the government." *See*, Relator's Opposition, p. 10. This is true. However, Relator fails to appreciate that both *Acacia* and *Lusby* involved factual allegations that were far more detailed than those presented by Relator in her Second Amended Complaint and the courts in those cases dismissed the more generalized fraud claims such as those Relator asserts here.

The Seventh Circuit's recent decision in *Acacia*, in particular, provides this Court with a road map as to how to proceed as to Relator's Second Amended Complaint. In *Acacia*, the court examined two distinct sets of allegations relating to alleged false claims submitted by the relator's employer. In the first set, the relator set forth claims relating to a specific CPT code, 90801, and alleged that she was directed by her superiors to use this code even after she was instructed to discontinue the psychiatric evaluations to which this code related. *Acacia*¸ at 778. The relator also alleged that specific identified non-medical personnel were instructed to use this code. *Id.* In short, the Seventh Circuit noted, the allegations relating to CPT code 90801 stated

"clearly and specifically that Acacia provided non-psychiatric evaluations and then falsely presented those services as psychiatric services on bills to the state and federal governments." *Id.* The *Acacia* court found that these allegations, relating to the misuse of a specific CPT code and subsequent billing of Medicaid for a "completely different treatment" than was actually performed, set forth a viable claim under the FCA. *Id.* at 779. Such is not the situation with which this Court is presented.

When the Seventh Circuit in *Acacia* turned to the relator's more generalized second set of allegations relating to whether various practices and policies for evaluations, drug screenings, and prescription refills were "reasonable and necessary for the treatment of illness and injury," the court found that the relator's allegations presented "significant cause for concern." *Id.* With regard to these allegations, the court found that the relator failed to provide the "medical, technical, or scientific context which would enable a reader of the complaint to understand why Acacia's alleged actions amount to unnecessary care forbidden by the statute" and failed to set forth "any reasons why these treatments actually were unnecessary other than [the relator's] personal view" *Id.* As a result of these failures, the Seventh Circuit opined that:

> **Not only does the lack of context make these allegations too indefinite, but each of the allegations depends entirely on [relator's] personal estimation—an estimation that is not supported in any concrete manner. Many potential relators could claim that "in my experience, this is not the way things are done."** However, relators may not be in a position to see the entire picture or may simply have a subjective disagreement with the other party on the most prudent course of action. **Further, their perspective may be colored by considerable bias or self-interest, such as in the case of a disgruntled employee. The heightened possibility of mistake or bias supports the need for a higher standard of specificity for fraud compared to other civil litigation.**

*Id.* at 780-781 (emphasis added; internal citations omitted).

As in *Acacia*, Relator in this case is a disgruntled former employee looking for someone to blame for her termination other than herself -- a factor the Seventh Circuit emphasized should

not be overlooked. Relator's generalized allegations are akin to the second set of allegations dismissed by the court in *Acacia,* not the detailed and specific allegations relating to a particular billing code that were allowed to proceed. Like the relator in *Acacia,* Relator here relies on her own personal estimations and subjective evaluation that the radiology claims submitted by KDHS were "improper and unnecessary" and fails to provide this Court with any of the required context which would allow her claims to survive. *See,* Second Amended Complaint, ¶¶ 24-26. Rule 9(b) requires that Relator be held to a higher standard.

In *Acacia,* the relator also alleged firsthand details of directives from the defendants as to the submission of the very claims alleged to be false. Here, Relator can allege no similar facts and attempts instead to rely upon emails from other unspecified hospitals that were allegedly not billing in the same manner as KDHS. Rather than providing this Court with the types of specific details that are required, Relator then attempts to buttress her unsubstantiated allegations with her own unsubstantiated conjecture. Relator argues that KDHS must have been fraudulently billing, not because it violated any statute or regulation, but because unidentified others at other hospitals claim to have done things differently. Relator then pontificates that "these charges necessitated a cover-up by [KDHS], to prevent the federal government from learning about the charges at issue, and to ensure the money kept flowing to KDHS" thereby creating an "inference of knowledge of deceit and ongoing false claims." *See,* Relator's Opposition, p. 16.

This argument is logically inconsistent and nonsensical. Relator fails to provide this Court with any detail as to what exactly was supposed to have been "covered up" by KDHS as it relates to the federal government's knowledge of KDHS's activities. Indeed, as Relator's own allegations in her Second Amended Complaint make clear, to the extent such claims relating to the alleged radiology planning procedures were submitted, they were submitted openly, with no

effort by KDHS to conceal its actions. *See,* Second Amended Complaint, ¶ 24. Moreover, such claims would have necessarily included the dates of service on them as part of the checks provided by the Fiscal Intermediary Standard System. *See, Id.*, ¶ 24. Thus, if the procedures were *per se* fraudulent simply due to their closeness in time, as Relator appears to allege, KDHS did a terrible job at "covering up" its actions by submitting each claims to the federal government for reimbursement and including the dates of service on them. It almost goes without saying that Relator's unsubstantiated and logically inconsistent speculation does not provide the required support for her FCA claims. As the Seventh Circuit held in *Acacia*, claims such as these, which are premised on nothing more than the relator's personal estimation, are insufficient. Accordingly, Relator's claims must be dismissed.[1]

Similarly, in the *Lusby* case, the facts were again pled with far more particularity than Relator has alleged in this case, yet the district court dismissed the suit on the ground that the complaint did not plead fraud with the particularity required by Fed. R. Civ. P. 9(b). *United States ex rel. Lusby v. Rolls-Royce Corp.*, 570 F.3d 849, 853 (7th Cir. 2009). On appeal, the Seventh Circuit again examined much more detailed allegations than those presented by Relator in the instant case. In *Lusby*, the relator's claims were supported by detailed allegations as to specific part numbers, specific shipment dates, details of payment, five specific contracts, descriptions of test results allegedly confirming the relator's suspicions, specific allegations as to the certifications that were made, and allegations as to the specific regulation that was violated, satisfied Rule 9(b). *Id.* at 853-854. However, the Seventh Circuit held that the relator's other

[1] KDHS also notes that the relator in *Acacia* provided the court with four examples of patients that allegedly received unnecessary treatment and the Seventh Circuit still dismissed the relator's claims for lack of required specificity as to the allegations themselves. Thus, Relator's offer here to provide the names of specific patients who were allegedly involved in her claims does nothing to cure the deficiencies in her Second Amended Complaint. Simply providing a patient name does nothing to show how or why the claim submitted by KDHS was allegedly false.

more generalized allegations that "all of the parts were substandard" were not sufficiently pled and, therefore, upheld dismissal of those allegations for failure to satisfy Rule 9(b) because the complaint did not "offer any reason to think that Rolls-Royce committed fraud." *Id.* at 855.

Relator herself cites to the Seventh Circuit's decision in *Lusby* as support for her argument that she does not need to identify any particular false claim or statement; unfortunately, the passage relied upon by Relator and provided by her to this Court is incomplete. In *Lusby*, the entire passage from which Relator selectively quotes reads as follows:

> The district court held that, unless Lusby has at least one of Rolls-Royce's billing packages, he lacks the required particularity. Since a relator is unlikely to have those documents unless he works in the defendant's accounting department, the district court's ruling takes a big bite out of qui tam litigation. We don't think it essential for a relator to produce the invoices (and accompanying representations) at the outset of the suit. **True, it is essential to show a false statement.** But much knowledge is inferential – …and the inference that Lusby proposes is a plausible one.

*Id.* at 854 (emphasis added). As other courts which have since examined the *Lusby* decision have noted, "In *Lusby*, 'the relator did not possess an actual bill or invoice, but he alleged specific [goods], dates, and details of payment in his complaint. In short, the relator provided specific factual allegations concerning how the defendant submitted false claims to the government.'" *United States ex rel. Keen v. Teva Pharms. USA Inc.*, 2017 U.S. Dist. LEXIS 518, *11 (N.D. Ill. 2017), citing *United States ex rel. McGinnis v. OSF Healthcare Sys.*, 2014 U.S. Dist. LEXIS 89167 (C.D. Ill. 2014). Relator has alleged none of those things here. Relator has not identified any false statement by KDHS to support Count I of her Second Amended Complaint, let alone the level of detail alleged by the relator in *Lusby*.

**B. Application of the precedent established in *Grubbs* also requires dismissal.**

Relator next cites to a case from the Fifth Circuit for further support of the notion that she is not required to plead the details of an actually submitted false claim, but that merely pleading

"details of the scheme are sufficient coupled with indicia that lead to a strong inference that the claims were actually submitted." *United States ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 190 (5th Cir. 2009). Once again, the citation Relator provides this Court does not contain the entirety of the court's holding or, more importantly, the context-specific rationale underlying the court's decision.

In *Grubbs*, it is first important to understand the "scheme" that was alleged in the relator's complaint. The relator, a psychiatrist, was hired by a hospital. Before his first weekend of work, he alleged that the chair of the medical staff of the psychiatric department and another psychiatrist at the hospital took him to dinner. Over dinner, the doctors divulged to him their fraudulent billing scheme and instructed him on how he was to contribute to the scheme. The doctors instructed him that during weekend on-call shifts, the doctors meet with the nursing staff to get updates on patients and then only see the patients "as needed" but every day bill as if a "face-to-face" hospital visit was performed. He further alleged that during his on-call weekend, the nursing staff did indeed attempt to assist him in recording face-to-face visits that had not occurred. He reported this practice to a hospital administrator the next day, who said to him, "[y]ou certainly figured that out quickly." In addition, the relator alleged at least one overt act of false billing for each doctor, containing a date, the type of service, the CPT code billed, and an allegation that the medical records indicated that no services were provided on that date. *Id.* at 184. These facts, as alleged by the relator in *Grubbs*, stand in stark contrast to the allegations contained in Relator's Amended Complaint.

In discussing the presentment requirement of §3729(a)(1), which is the conduct that gives rise to liability, the *Grubbs* court held that "the particular circumstances constituting the fraudulent presentment are often harbored in the scheme." The court continued,

> Rather, the rule is context specific and flexible and must remain so to achieve the remedial purpose of the False Claims Act. We reach a workable construction of Rule 9(b) with complaints under the False Claims Act; that is, one that effectuates Rule 9(b) without stymieing legitimate efforts to expose fraud. We hold that to plead with particularity the circumstances constituting fraud for a False Claims Act §3729(a)(1) claim, a relator's complaint, **if it cannot allege the details of an actually submitted false claim, may nevertheless survive by alleging particular details of a scheme to submit false claims paired with reliable indicia that lead to a strong inference that claims were actually submitted**.
>
> **This standard comports with Rule 9(b)'s objectives of ensuring the complaint "provides defendants with fair notice of the plaintiffs' claims, protects defendants from harm to their reputation and goodwill, reduces the number of strike suits, and prevents plaintiffs from filing baseless claims then attempting to discover unknown wrongs**."

*Id.* at 189 (emphasis added). Relator has neither alleged an actually submitted false claim nor a *Grubbs*-type scheme with reliable indicia that lead to a strong inference that false claims were submitted by KDHS. Rather, Relator's lawsuit is exactly the sort that Rule 9(b) is designed to prevent.

**C. Application of the precedent established by this Court in *Abner*, requires dismissal.**

Finally, Relator's heavy reliance on this Court's pre-FERA decision in *Abner v. Jewish Hosp. Health Care Servs.*, 2008 U.S. Dist. LEXIS 61985 (S.D. Ind. 2008) only serves to again illustrate and underscore the fundamental problems with her Second Amended Complaint. Relator claims that her complaint is "far more robust" and argues that this decision shows that this Court previously allowed claims similar to Relator's to proceed. *See*, Relator's Opposition, p. 20. While Relator's Second Amended Complaint contains more numbered paragraphs than the complaint in *Abner*, she argues form over substance. Even a cursory review of the complaint in *Abner* reveals far more detail than any of Relator's theories of liability in her Second Amended Complaint. Moreover, this Court did not, as Relator asserts, "deny the motion to dismiss." *See*, Relator's Opposition, p. 20. Just as the courts in *Acacia* and *Lusby* did previously, this Court in

*Abner* carefully reviewed each of the relators' theories of liability and allowed the more detailed claims which met the heightened pleading standards of Rule 9(b) to proceed, while at the same time dismissing a number of theories that failed to meet this standard. To state otherwise, as Relator does here, misrepresents this Court's holding in *Abner*.

In *Abner*, the relators set forth six theories of liability under the FCA. The first three theories all related to "intentional falsehoods" that alleged clearly fraudulent conduct on the face of the scheme. Each of these theories was also supported with specific details as to individual patients and procedures, specific dates of procedures, first-hand observations by the relator as to specific instructions given to engage in false billing practices and the fact that these instructions were complied with by hospital staff. *See*, *Abner*, at 16-19. In each instance, this Court found that the relators' allegations as to these theories of liability met the heightened pleading standards under Rule 9(b) and allowed the claims to proceed.

However, after examining the relators' remaining three theories of liability in *Abner*, this Court dismissed each of them. The Court found that the relators' fourth and fifth theories of liability, relating to submitting bills using false codes and submitting separate bills for preoperative tests, failed to "identify any individual transactions or describe in detail when or how defendants carried out such schemes" in order to "assure the court that the allegations are not merely conclusory." *Abner*, at 19-20. This Court also found that the relators in *Abner*, much like Relator here, failed to identify "any particular claim as representative of the scheme alleged" and their claims under these theories of liability were thus subject to dismissal. *Id.*, at 20.

Likewise, the relator's sixth theory of liability in *Abner*, relating to submitting bills for tests performed on spoiled blood samples, was also dismissed by this Court. This theory set forth a claim for ineffective testing, which, unlike relator's other theories of liability, did not involve

"patent falsity." *Id.*, at 21. To transform such a claim into alleged fraud, this Court held, "the relators must point to specific regulations indicating that the alleged practice, if true, is materially false, not merely a technical violation." *Abner*, at 21-22, citing *Luckey v. Baxter Healthcare Corp.*, 183 F.3d 730, 733 (7th Cir. 1999). As the relators did not do so, this Court dismissed their claim. Here, Relator's allegations similarly allege conduct that is not "patently false." As such, Relator must direct this Court to specific regulations which were alleged to have been violated in order to show fraud. She has not. Relator has failed to allege any specific statute or regulation she claims was violated or any relevant guidance from the government or other authoritative source to support the substance of her allegations. Accordingly, pursuant to this Court's decision in *Abner*, Relator's claims must be dismissed.

**D. None of Relator's theories of liability pass muster.**

In addition to Relator's main theory of liability premised on the alleged unnecessary billing of radiology scans, Relator's Second Amended Complaint also attempts to substitute quantity for quality by setting forth numerous vague alternative theories in the hopes that one of them will pass muster. None of them do.

Despite alleging numerous theories in her Second Amended Complaint, Relator's opposition then focuses primarily on her first theory of liability regarding second full radiation treatment planning scans and glosses over all of the others, some with no mention whatsoever and no attempt to claim they are sufficiently plead under Fed. R. Civ. P. 8, 9(b) and 12(b)(6). As discussed previously above and in detail in KDHS's motion to dismiss, none of Relator's theories of liability have been plead with the particularity and plausibility required by the Civil Rules, let alone in the FCA context with the required scienter, falsity and materiality, as set forth in great detail in KDHS's motion to dismiss. Relator's inability to link specific allegations of

fraud to government payment is fatal to her claims. *U.S. ex rel. Garst v. Lockheed-Martin Corp.*, 328 F.3d 374, 378 (7th Cir. 2003).

Relator's opposition also attempts to save her claims by undertaking an implied false certification analysis on the authority of *Universal Health Servs. v. United States ex rel. Escobar,* 136 S. Ct. 1989 (2016). However, as discussed previously, despite the conclusory allegations added to Relator's Second Amended Complaint that KDHS made false certifications to the United States, Relator has not identified a single statute or regulation that is alleged to have been violated that would have made such a certification false, let alone what those certifications purportedly entailed or how they were material to the Government's decision to pay the claims Relator alleges to have been false. Without any allegation of falsity connected to a claim for payment, it is impossible to decipher exactly what certification(s) Relator alleges KDHS knowingly made knowing they were false when made. *See United States ex rel. Hanna v. City of Chicago,* 834 F.3d 775, 779-780, 2016 U.S. App. LEXIS 15400, *10-13 (7th Cir. Ill. 2016) (holding that "[i]f the particularity requirement is meant to ensure more thorough investigation before filing, it is not too much to ask that one aspect of that investigation include the specific provisions of law whose violation made the certification of compliance false.)

As courts in this Circuit have recently held when faced with similar attempts to rely on the implied certification doctrine to save defective claims, "changing the theory of falsity does not change the fact that relator has not alleged with the requisite particularity that [the defendant] caused the submission of false claims or made false statements or records material to false claims submitted to the government." *United States ex rel. Keen v. Teva Pharms. USA Inc.,* 2017 U.S. Dist. LEXIS 518, *11-12 (N.D. Ill. 2017).

Moreover, simply arguing that something is material to the Government's decision to pay does not make it so. *See, e.g.,* Second Amended Complaint, ¶ 35. Relator's Second Amended Complaint sets forth a claim premised on the pre-FERA version of §3729(a) in Count I and, necessarily, does not even include allegations relating to the materiality element. Prior to the 2009 FERA amendments, the language contained in §3729(a) did not contain an express materiality requirement. Post-FERA, §3729(a) now requires that a complaint allege that the defendant in an FCA action "knowingly made, used, or caused to be made or used, a false record or statement ***material to*** a false or fraudulent claim." 31 U.S.C. §3729(a)(1)(B).

Relator fails to plead any facts which would meet the materiality requirement in her Second Amended Complaint. This omission is particularly glaring in light of the United States Supreme Court's recent admonition in *Escobar* that the materiality standard is "demanding" and "rigorous" and must be properly pled with both "plausibility and particularity" at the pleadings stage to survive a motion to dismiss. *Escobar,* 136 S. Ct. at 2003-2004, and n.6. Relator's attempt to save her claims by stating that she plead "materiality" simply by stating in a conclusory manner that the submissions were material in paragraph 83 of her Second Amended Complaint flies in the face of the "demanding" and "rigorous" requirement that materiality be pled with both "plausibility and particularity" as required by *Escobar*. *See*, Relator's Opposition, p. 25. Indeed, as discussed above and in KDHS's motion to dismiss, Relator's claims cannot be deemed material to the government's decision to pay in this case, because Relator has failed to identify even a single statute or regulation that was violated prior to the alleged claim for payment being made.

**E. Relator's conspiracy and retaliation claims likewise fail and pendent jurisdiction over Relator's state law claims should not be exercised.**

Further, Relator's arguments as to Counts II and IV are likewise unavailing. There is no basis upon which Relator can premise either Count on the facts as alleged.

Failure to allege with particularity the details of the alleged conspiracy to commit fraud are fatal to Relator's claims. *See United States ex rel. Morison v. Res-Care, Inc.*, 2017 U.S. Dist. LEXIS 15917 (S.D. Ind. Feb. 3, 2017). Like the relator in *Morrison*, Relator fails to allege who agreed with whom to violate subsections 3729(a)(1)(A) and (B) of the FCA, an identified act in furtherance of the conspiracy, when the conspiracy was committed, who filed the allegedly false claims, the method by which the claims were filed, and the amount of payment. *See Id.* at 10, citing *United States ex rel. Walner v. NorthShore Univ. Healthsystem*, 66 F.Supp. 2d 891, 898 (N.D. Ill. 2009) (dismissing FCA claim where relator "fails to plead who agreed with whom, how they agreed, how they decided to file a false claim, who made the alleged misrepresentation, who filed the allegedly false claim, the method by which it was filed, and how much the payment was for.") Instead Relator offers only the names of the radiologists working at KDHS and a vague, unsupported allegation that "upon information and belief" the claims were for "approximately" $375 for some unknown, but "significant percentage" of Medicare/Medicaid patients seen at KDHS over an unknown time period commencing "since at least January 19, 2010." *See*, Second Amended Complaint, at ¶¶ 22-24.

Indeed, when presented with these shortcomings, Relator's opposition does not provide any specifics and only vaguely describes the alleged acts taken in furtherance of the conspiracy as "the submission of false claims." Relator's opposition also concedes that she cannot narrow the dates down to more than the six year statutory maximum for claims under the FCA. *See*, Relator's Opposition, p. 31. Simply piling more vague allegations onto Relator's already

insufficiently vague complaint does not cure the defects with Relator's claim and does not serve to "distinguish" *Morison*. To the contrary, Relator's continued inability to offer any specifics, even after being granted multiple attempts to do so by this Court, demonstrates that Relator is unable to allege any of the facts that make up the alleged conspiracy with any of the particularity required under Rule 9(b). As such, this claim should likewise be dismissed.

Finally, where, as here, the Relator has failed to sufficiently plead underlying violations of the FCA, the Court cannot conclude that the allegations support a finding that that Relator was acting in furtherance of an FCA enforcement action or other efforts to stop violations of the FCA and a claim for retaliation under the FCA must be dismissed. *Singer v. Progressive Care, SC*, 2016 U.S. Dist. LEXIS 106454 *25 (N.D. Ill. August 11, 2016), citing *United States ex rel. McGinnis*, 2014 U.S. Dist. LEXIS 89167 at *35. As shown above, Relator has failed to sufficiently plead any violation of the FCA. This distinction is key. The protection Relator claims she is entitled to by virtue of her actions allegedly taken in furtherance of an FCA enforcement action or as part of other efforts to stop an alleged violation of the FCA is only available if the actions she claims to have been attempting to prevent actually set forth a violation of the FCA. *McGinnis*, at *35-36 ("Without finding that the Relator has sufficiently pled underlying violations of the FCA, the Court cannot conclude that the allegations support a finding that Relator was acting in furtherance of an FCA enforcement action or other efforts to stop violations of the FCA.").

Moreover, Relator's reliance on this Court's decision in *Abner* to provide support for her retaliation claim is not well taken. First, *Abner* specifically limited the protections under the False Claims Act's anti-retaliation provision only "so long as the employee does not make deliberately false or baseless accusations of fraud." *Abner*, at *27. Additionally, *Abner* dealt with

a fact pattern in which the Court had already found that the relators in that case had adequately pled some of their claims and, therefore, the Court found that it "[could not] say at this point that their allegations are deliberately false or groundless." *Id*, at *28. Thus, this Court's decision in *Abner* does not address the situation presented here, where Relator has utterly failed to adequately plead any violation of the FCA. Accordingly, her claim for retaliation must likewise be dismissed.

## III. CONCLUSION

For all of these reasons, and those stated in its motion to dismiss, Defendant The Bethany Circle of King's Daughters' of Madison Indiana, Inc. d/b/a The King's Daughters' Hospital and Health Services respectfully requests this Court grant its motion to dismiss Relator's Amended Complaint, with prejudice, and without leave to file a Third Amended Complaint.

Respectfully submitted,

s/ Jennifer Orr Mitchell

Michael W. Hawkins (OH 0012707)
Jennifer Orr Mitchell (OH 0069594)
Matthew S. Arend (OH 0079688)
DINSMORE & SHOHL LLP
1900 Chemed Center
255 East Fifth Street
Cincinnati, Ohio 45202
Phone: (513) 977-8200
Fax.: (513) 977-8141

Rodney L. Scott, (#14650-49)
WATERS TYLER HOFMAN SCOTT, LLC
1947 E. Spring Street
New Albany, IN 47150-1658
Phone: (812) 206-6044
Fax: (812) 949-2189
***Counsel for Defendant The Bethany Circle of King's Daughters' of Madison Indiana, Inc. d/b/a The King's Daughters' Hospital and Health Services***

## CERTIFICATE OF SERVICE

I hereby certify on this 10th day of May, 2017 that a true and correct copy of the foregoing document was served on all registered parties through the CM/ECF system:

s/ Jennifer Orr Mitchell

Jennifer Orr Mitchell (0069594)